**UNITED STATES of America**

v.

**Anthony SALERNO et al.**

**Appeal of William SILVERMAN.**

**No. 76–1213.**

United States Court of Appeals, Third Circuit.

Argued June 7, 1976.

Decided July 15, 1976.

As Amended July 30, 1976.

Rehearing Denied Oct. 4, 1976.
See 542 F.2d 628.

---

Judith M. Mears, Supervising Atty., Jay M. Cohen, Mark Carlin, Law Students, New Haven, Conn., for appellant.

Jonathan L. Goldstein, U. S. Atty., Maryanne T. Desmond, Asst. U. S. Atty., Newark, N. J., for appellee.

Before VAN DUSEN, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

William Silverman appeals from the district court's denial of his 28 U.S.C. § 2255 motion to vacate and correct the criminal sentence under which he is presently incarcerated.[1] He contends that, because of facts unknown to the sentencing judge, that judge sentenced him under a misapprehension of the parole consequences of the sentence. Because we are persuaded by this proposition, we reverse the decision of the district court and direct that appellant be resentenced.

Appellant was found guilty on October 27, 1972, of conspiring to transport stolen securities in interstate commerce in violation of 18 U.S.C. § 371. On January 26, 1973, Judge Garth, then of the United States District Court for the District of New Jersey, sentenced Silverman to three years' imprisonment pursuant to 18 U.S.C. § 4208(a)(2). Appellant began serving his sentence on July 1, 1974.

Section 4208(a)(2) is one of three sentencing provisions a district judge can utilize. Under 18 U.S.C. § 4202, the defendant will be eligible for release on parole only after he has served one-third of his sentence. Under 18 U.S.C. § 4208(a)(1), the judge can designate the minimum term of imprisonment that the defendant must serve before he can become eligible for parole. Section

---

1. Silverman also sought resentencing pursuant to Rule 35, Federal Rules of Criminal Procedure. He does not appeal from the denial of the parts of his motion made under that provision.

4208(a)(2), by contrast, permits immediate eligibility for parole, giving the Parole Board complete discretion to determine when a prisoner should be paroled.

A defendant sentenced under § 4208(a)(2) generally receives an initial Parole Board hearing within the first four months of confinement, Project, *Parole Release Decisionmaking and Sentencing Process*, 84 Yale L.J. 810, 819 (1975) [hereinafter cited as "Project"], and continues to be eligible for parole thereafter. Under Parole Board regulations in effect at the time Silverman was sentenced, the primary criteria on which the Board based a parole decision were institutional behavior and the probability of recidivism. *See* 28 C.F.R. § 2.4 (1973); Project, *supra*, 84 Yale L.J. at 820–22, 826. *See generally* Comment, *Curbing Abuse in the Decision to Grant or Deny Parole*, 8 Harv.Civ.R.-Civ.L.L.Rev. 419, 427 (1973); Comment, *The Parole System*, 120 U.Pa.L.Rev. 282, 304–5 (1971).

In late 1973, however, the Board of Parole adopted new criteria and procedures for parole determinations. These standards are applicable to all prisoners, whether sentenced under § 4202, § 4208(a)(1), or § 4208(a)(2). The new system is based on a set of "guidelines" which are a statement of "the manner in which [the Parole Board] generally intends to exercise its discretion." *Battle v. Norton*, 365 F.Supp. 925, 933 (D.Conn.1973) (Appendix I, affidavit of M. Sigler, Chairman, United States Board of Parole). Under the guideline system, hearing examiners[2] first look at an inmate's record to determine a "salient factor score" which is supposed to predict the likelihood that an inmate will commit a new crime within two years of release. *See* 28 C.F.R. § 2.20 (1975). The examiner then classifies the inmate's crime in accordance with the severity scale found in the guidelines. *Id.* The severity classification and salient factor score intersect on a matrix-type chart to show a predicted length of time to be

served. *Id.* The predicted period is equal to the median term of actual incarceration served by a sample of pre-guidelines federal inmates with the same "offense behavior severity" and "salient factor score" determined retrospectively. *See generally* Project *supra*, 84 Yale L.J. at 822–8.

The predicted period of incarceration is only a guideline and hearing examiners may grant parole when time served is either above or below the predicted period. *See* 28 C.F.R. §§ 2.20(c), 2.23 (1975). However, experience indicates that the overwhelming majority of parole decisions fall within the guidelines. From October 1973 to March 1974, 88.4 percent "of the decisions at initial hearings were within the guidelines" as reported to the court of appeals in *Kortness v. United States*, 514 F.2d 167, 169 (8th Cir. 1975). *Kortness* also noted that the Director of Research for the Parole Board had testified in *Grasso v. Norton*, 376 F.Supp. 116, 119 (D.Conn.1974), *aff'd*, 520 F.2d 27 (2nd Cir. 1975), that "the Board follows its guidelines between 92 and 94 percent of the time." *See* Project, *supra*, 84 Yale L.J. at 825, n. 75, 869 n. 293.

By the time Silverman began his incarceration, the guidelines system was in effect. As applied to him, the guidelines suggested 45–55 months of incarceration before release on parole, the minimum period being nine months longer than his entire sentence. Silverman received a parole hearing three months after he began serving his sentence; parole was denied. After approximately one-third of his sentence was completed, Silverman's file was reviewed by a hearing examiner. Again parole was denied. He remains in custody at this time.

Silverman argues that Judge Garth sentenced him under § 4208(a)(2) so that he might be eligible for early parole. Judge Garth must have expected, he argues, that the special nature of the § 4208(a)(2) sentence would be taken into account, and that he would be given serious consideration for

---

2. In "Original Jurisdiction" cases, *see* 28 C.F.R. § 2.17 (1975), the Regional Director would make this initial determination.

early parole based on the then-existing criteria, primarily institutional performance. Due to the guidelines and their implementation, Silverman had better than a 90 percent chance of serving his entire three year sentence. Silverman contends that had Judge Garth intended him to serve three years without serious parole consideration based on institutional performance, Judge Garth would not have sentenced him under § 4208(a)(2). Because Judge Garth's expectations were frustrated by the implementation of the guidelines system, the argument continues, Silverman claims he is entitled to resentencing by a judge aware of the parole consequences of the sentence given.[3]

The district judge rejected this argument. He reasoned that Judge Garth's use of § 4208(a)(2) indicated only an intent that Silverman should receive early meaningful parole consideration. Also, Judge Garth knew that the parole decision was within the Board's discretion. He further reasoned that Silverman received the required early consideration in the three-month point hearing and that application of the guidelines was not inconsistent with the discretion vested in the Parole Board pursuant to 18 U.S.C. § 4203. The guidelines assume good institutional adjustment and decisions can be made outside the norms if institutional performance warrants it. Thus, Judge Coolahan concluded, use of the guidelines is perfectly consistent with Judge Garth's expectation of meaningful parole consideration.[4]

■ The legislative history of § 4208(a)(2) amply indicates that it was intended to give district judges a mechanism to adjust the length of a defendant's sentence to his progress in rehabilitation programs and his attitude toward a return to society. *See* Hearings on H. J. Res. 424, H. J. Res. 425, and H.R. 8923 Before Subcommittee No. 3 of the House Committee on the Judiciary, 85th Cong. 2d Sess., Ser. 14 (1958) at 5-6, 8-9; *Garafola v. Benson,* 505 F.2d 1212, 1216-7 (7th Cir. 1974); *Grasso v. Norton,* 371 F.Supp. 171, 173-4 (D.Conn.1974). District judges have so interpreted and utilized the statute. *See* authorities collected in *Garafola v. Benson,* 505 F.2d at 1218; *Grasso v. Norton,* 371 F.Supp. at 174; Project, *supra,* 84 Yale L.J. at 845, 890 n. 388. Indeed, Judge Lacey of the United States District Court for the District of New Jersey recently concluded that his unawareness of the guidelines created "a mistaken assumption about the effect of a § 4208(a)(2) sentence" which warranted resentencing. *Briggs v. United States,* Civ.Action No. 75-1558 (D.N.J.Nov. 19, 1975).[5]

■ At the time of Silverman's sentencing, Judge Garth stated:

It would seem to me that that particular section of the statute [§ 4208(a)(2)] which gives the utmost latitude of flexibility to a determination by the parole authorities, a determination that I cannot make at this time, but which I think might very well vest in them that discretion to determine at what point in time you should become eligible for parole.

We believe that this statement negates any intent to commit Silverman to a virtually certain three-year incarceration. In light of the legislative history of section 4208(a)(2) and district court sentencing practice thereunder, we think it probable

---

3. Appellant does not contend that the guidelines are per se illegal and we do not intimate any view on that question.

4. The district judge also concluded and we agree that 28 U.S.C. § 2255, which provides in relevant part that a district court has jurisdiction of a motion "to vacate, set aside, or correct" a sentence imposed without jurisdiction, "in excess of the maximum authorized by law, or . . . otherwise subject to collateral attack," is an appropriate vehicle for making this claim. *See Kortness v. United States, supra,* 514 F.2d at 170; *United States v. Perchalla,* 407 F.2d 821, 823 (4th Cir. 1969). *Cf. United States v. Hayman,* 342 U.S. 205, 216-19, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

5. Two other circuits have ordered resentencing out of concern for the effect of the guidelines on the sentencing process. *Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975); *United States v. Slutsky,* 514 F.2d 1222, 1226-30 (2d Cir. 1975).

that Judge Garth expected Silverman to be seriously considered for parole only on the basis of his institutional performance and the Board's expectation of his ability to live within the law upon his release.[6] The implementation of the guidelines frustrated this probable expectation.

We do not believe that our holding will seriously burden either the district courts or this court. Where the motion to vacate sentence can be directed to the sentencing judge, the question whether his sentencing expectations have been frustrated is easily resolved and there should be no need for review of that decision in the Court of Appeals. In the rare case, as here, when the original sentencing judge is no longer on a district court bench, and the record convincingly shows by the statement of the trial judge at sentencing that he intended to have the defendant receive meaningful parole consideration, then we believe that resentencing should be required.

Accordingly, the order of the district court is reversed and the case is remanded to the United States District Court for the District of New Jersey to exercise its discretion whether or not to modify Silverman's sentence in light of the guidelines promulgated by the Board of Parole. The district court may wish to request the Chief Judge of this Circuit[7] to designate Judge Garth, the original sentencing judge, to undertake the task of resentencing.

---

**6.** It should be stated on the record that Judge Garth, now a member of this court, recused himself from this case and has not participated in the consideration or decision of it.

**7.** *See* 28 U.S.C. § 291(c).