Herbert MYLES

v.

UNITED STATES of America.

Civ. A. No. 76–3076.

United States District Court,
E. D. Pennsylvania.

March 14, 1977.

Herbert Myles, pro se.

John E. Riley, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

LUONGO, District Judge.

This is a *pro se* petition by Herbert Myles under 28 U.S.C. § 2255 seeking to vacate a sentence imposed on him for bank robbery in *United States v. Herbert Myles, Criminal No. 69–183.* The ground for the petition is that application of the 1973 Parole Board Guidelines to his case have frustrated the sentencing judge's intent. It is apparent from the record papers that there is no merit to the petition and it will be denied without hearing.

■ A sentence may be challenged under 28 U.S.C. § 2255 if it was imposed prior to the adoption of the 1973 Parole Guidelines *and* if the intent of the sentencing judge has been frustrated by the application of the Guidelines. *United States v. Salerno,* 538 F.2d 1005 (3d Cir.), *reh. den.,* 542 F.2d 628 (3 Cir. 1976).

"Where the motion to vacate sentence can be directed to the sentencing judge, the question whether his sentencing expectations have been frustrated is easily resolved and there should be no need for review of that decision  .  .  .."
538 F.2d at 1009.

After trial before a jury, Herbert Myles was found guilty of a bank robbery in the course of which a weapon was used and both Myles and a police officer were wounded. Myles appeared before me for sentencing on October 30, 1970. He was then 47 years old and had an extensive prior record of convictions, including several for crimes involving the use of firearms. He had received and served substantial sentences of imprisonment. His record was such that at the time of sentencing Myles' extremely capable counsel said initially:

"If Your Honor please, under the totality of circumstances in this case, I think perhaps the best service that I can perform for my client is to say nothing except to ask the Court to be merciful."

When asked whether there was anything he wanted to say, Myles responded:

"I agree with what counsel said."

After a short discussion of Myles' age and his prior record, sentence was imposed with these comments:

"THE COURT:  .  .  .  Mr. Myles, I have given very careful thought and very careful consideration, and the only mercy, really, that I can show is to impose a sentence under the 4208(a)(2) section, which will give to the Board of Parole the maximum leeway in determining when you have been sufficiently repatriated (sic) [rehabilitated] to be let back into society; but I must under these circumstances impose a substantial sentence, in light of your background and in light of the severity of the crime that you committed here.

It is the sentence of this Court, under Count 4 of Criminal No. 69–183, that you, Herbert Myles, be committed to the custody of the Attorney General for a period of 17 years under the provisions of Title 18, Section 4208(a)(2), under which, as you know, you will be eligible for parole at any time that the Board of Parole deems that your rehabilitation merits such consideration.

I have given, as I say, Mr. Myles, a great deal of thought to this, and I just wouldn't be doing my duty if I didn't impose a substantial sentence; yet at the same time I think that under this kind of sentence, if you prove to the prison authorities and to the Board of Parole that you are about to mend your ways, it will be within their power to grant you some kind of relief hereafter.

DEFENDANT MYLES: Thank you, sir."
*United States v. Myles, Crim.  # 69–183,* N.T. Oct. 30, 1970, pp. 3–4.

Thereafter counsel filed a Petition for Reconsideration of Sentence. A hearing was held on February 24, 1971, at the conclusion of which the sentence was reduced to 15 years under the provisions of § 4208(a)(2).

■ The sentence and the amended sentence were imposed prior to the adoption of the 1973 Parole Guidelines, thus petitioner meets one of the requirements for § 2255 relief, but he fails completely in establishing the other, i. e., frustration of the sentencing judge's intent and expectation in imposing the (a)(2) sentence. The 20 pages of colloquy at the hearing on the Petition for Reconsideration of Sentence makes it abundantly clear that everyone, the court, counsel and the defendant himself, fully expected that, in view of the seriousness of the crime and his extensive prior record, Myles would likely serve the maximum time less mandatory good time earned. A few excerpts from the transcript of the February 24, 1971 hearing, set forth in the Appendix attached hereto, demonstrate that beyond question.

To dispel any possible remaining doubt as to my intent, as the sentencing judge, in making the sentence subject to the provisions of § 4208(a)(2), I state now my reasons.

Over the years, in almost all instances in which I imposed a lengthy prison sentence, I made it subject to § 4208(a)(2). This was done because obviously I could not safely predict the defendant's future conduct. The Parole Board, on the other hand, would have the benefit of the defendant-prisoner's actual institutional conduct and performance. Making the sentence subject to (a)(2) was not intended as a prediction that the person so sentenced would merit early parole consideration, it was designed only to remove the legal impediment to early parole consideration in the event (however unlikely that might appear at time of sentencing) that the prisoner might demonstrate a remarkable transformation, an outstanding degree of rehabilitation, while in custody.

Along with many other judges, I have been disappointed with the Parole Board's apparent failure to make meaningful use of the flexibility afforded by (a)(2) sentences, but I cannot fault it for failing to use it in this specific case. In any event, even if I were to disagree with its judgment in this case (which, I repeat, I do not), such disagreement would not empower me, under the guise of § 2255 relief, to substitute my judgment for that of the Parole Board. See United States v. Somers, 552 F.2d 108 (3d Cir., 1977).

APPENDIX

Excerpts from Transcript of Hearing on Petition for Reconsideration of Sentence February 24, 1971.

"MR. HELLER: * * *

The only small consideration that he requested that I make was that the sentence which the court originally imposed, which was 17 years, under the special Statute, be reduced to 15 years, and the reason for that is that that would make his maximum time to be a period of 10 years from the time that he was originally incarcerated, which was almost 2 years ago. In March of 1969, I believe. * *

With respect to incarceration being a protection for society, which I think is probably one of the important things that the court had in mind in imposing this sentence, Mr. Myles is now 48 years old. When he gets out, if he gets out in 10 years, he will be 58. While I am not familiar with the statistics, I think it is likely that a person of that age, after a long period of incarceration, is not likely to go back to the way of life that he had.

I think the most significant thing that I can point out to the court is the very fact that Mr. Myles called me and asked me to see him and asked me to make this request for him. I think it is sort of a mental realization on his part that this is the end of the road and he might as well get used to it. The 2 year request is really an addendum to even out the sen-

tence and give him some extra free time."  (N.T. 2–3)

\* \* \* \* \* \*

"THE COURT: . . .. This is one of the problems, actually, Mr. Myles. As Mr. Heller so eloquently said, there isn't much hope of a man being rehabilitated after a certain number of years, and if I were only sentencing you because I was hoping you were going to change, I think I would be a fool.  Your past history indicates that you just don't learn lessons in custody. . . ."  (N.T. 6)

\* \* \* \* \* \*

"THE COURT: We are not going to accomplish anything by adding a few more years.  No, I didn't misunderstand your statement at all, and I hope Mr. Myles didn't misunderstand it, and that is that a sentence of greater length does not necessarily add to the chances of rehabilitation.  I agree with that wholeheartedly. If I thought, for example, that there was a serious chance of rehabilitating Mr. Myles, I might have in mind a totally different kind of sentence, but I don't have a great deal of hope that he will. Maybe he will, and I wish him luck, but based on past performance I would have to say I would be a bit discouraged about the chances of rehabilitation, so I am not imposing this sentence with the idea that by giving him that, there is a better chance of his being rehabilitated during that period of time than there would be if I gave him 15 years, say, as opposed to 17. There isn't that kind of a return on sentences at all."  (N.T. 13–14)

\* \* \* \* \* \*

"MR. HELLER: \* \* \*
He has the bent which Your Honor has indicated, but I say the very fact that he called me and spoke to me and said, 'Look, I am finished.  I would like to get all this behind me.  I would like to round it off so that I can get out when I am about 57 or 58 and then start over again if I can.'"  (N.T. 14)

\* \* \* \* \* \*

"MR. HELLER: The reason I point that out is not as a consideration for Your Honor reducing the sentence, but simply to point out the mental process of this defendant that he wants to be finished with the courts, and, as I say, if he had asked that the sentence be reduced from 17 years to 10 years or to 7 years, I could understand that the application would have no merit.  I don't know why he chose 2 years, except for the two reasons that I gave you.  One is that it rounds off his maximum time to 10 instead of 12, as he calculates it, and, secondly, it will compensate to some degree for the credits that he would receive if he were serving in a Federal institution at this time, which is of course no fault of the court. I think that there is no danger to society in reducing this sentence by 2 years." (N.T. 15)

\* \* \* \* \* \*

"THE COURT: \* \* \*
Mr. Myles, when you get released from this, if you get into any more trouble, you will be just causing me to lose faith completely in everybody.

DEFENDANT MYLES: Yes, sir.

THE COURT: And the next fellow then that comes before me, of course, that will be 10 years hence or more, will probably have to pay because you didn't do what Mr. Heller indicates you might, and that is start to go straight when you are close to 60 years old.

DEFENDANT MYLES: Yes, sir." (N.T. 20)