Calvin TRUDO

v.

WARDEN, UNITED STATES PENITEN-
TIARY, LEWISBURG, PENNSYLVA-
NIA, et al.

Civ. No. 77–364.

United States District Court,
M. D. Pennsylvania.

Dec. 27, 1977.

Calvin Trudo, pro se.

S. John Cottone, U. S. Atty., Scranton, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

■ Petitioner, presently incarcerated at the United States Penitentiary at Lewisburg, filed this action pursuant to 28 U.S.C. § 2241 on May 3, 1977. On May 20, 1977, he was granted permission to proceed in forma pauperis. All responses and counterresponses having been filed, the case is now ready for a determination on the merits. Since only issues of law are involved, a hearing is not necessary. See 28 U.S.C. § 2243. Pursuant to Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C.A. Appendix of Rules and Forms (Supp.1977), appli-

cable to 28 U.S.C. § 2241 through Rule 1(b), I have decided that a writ of habeas corpus shall issue unless within 30 days the United States Parole Commission gives petitioner a parole review hearing. At this hearing the examiners may not apply the new reparole guidelines, which went into effect as of October 4, 1976, to petitioner.

Petitioner was originally sentenced, under 18 U.S.C. § 4208(a)(2),[1] to an eighteen-year term on December 11, 1970 by the United States District Court for the District of Vermont for a violation of 18 U.S.C. § 2113(d) (armed bank robbery). He was released on parole on September 27, 1974. On November 26, 1974, while on parole, he was arrested on three charges of firearms' violations. He pleaded guilty to one of the counts on January 26, 1975 and was sentenced to a term of eighteen months. On February 10, 1975 a parole violator warrant was issued and it was lodged against him at the United States Penitentiary at Lewisburg on July 10, 1975. This warrant was automatically executed at the expiration of the firearms' violation sentence on January 30, 1976. At a hearing before a Parole Commission Panel on April 5, 1976 petitioner's parole was revoked and he was given an eight-month continuance to a review hearing in December 1976. At this December institutional review hearing he was continued to another review hearing in June 1978. Petitioner claims that at the December 1976 hearing new reparole guidelines were unlawfully applied to him. He has exhausted his administrative remedies by appealing the December 1976 hearing decision to the Regional Commissioner and to the National Appeals Board. The decision was affirmed at both levels.

In order to understand the facts of this case it is necessary to trace the promulgation of reparole guidelines and their interaction with the timing of petitioner's hearings. At petitioner's hearing on April 5, 1976 (hereinafter referred to as the first institutional hearing), no reparole guidelines were yet in effect. After this first

---

1. Subsequently repealed and replaced by 18 U.S.C. § 4205(b)(2).

institutional hearing, on May 14, 1976, new regulations promulgated by the United States Parole Commission went into effect. *See* 41 Fed.Reg. 19337 (May 12, 1976) (§§ 2.1 through 2.58). Section 2.21 established reparole consideration guidelines. Under this section petitioner's reparole guideline range was 32–38 months.[2]

On October 4, 1976, before petitioner's December 1976 review hearing (hereinafter referred to as the second institutional hearing), another set of United States Parole Commission regulations became operative. Among other things, some of the guideline ranges were increased. Under these new guidelines, petitioner's range would be 34–44 months. It was also stated that:

> The Commission recognizes that policy decisions decreasing or increasing the period of incarceration served by any federal prisoner must not be lightly embarked upon, and has devoted considerable discussion and study to those described above. Therefore, the Commission has decided that these amendments will be applied only to those prisoners who have not received their initial hearings as of the effective date of these rules. In the interests of consistency and fairness, prisoners who have already received initial hearings will not be reconsidered under the increased guideline ranges set forth herein. 41 Fed.Reg. 37317, § (B)(4)(d), *Application of the Changes*, (Oct. 4, 1976). *Hereinafter referred to as § (B)(4)(d).*

Thus, only those prisoners who had not had an initial hearing prior to October 4, 1976 would be considered under the new guideline ranges. The term "initial hearing" is nowhere specifically defined, but it is the heading for 28 C.F.R. § 2.13 (Oct. 1976). According to that section, at an initial hearing the examiners discuss with the prisoner his guideline range under § 2.20, his institutional conduct, and any other matter the

examiners feel is relevant. At the end of the hearing the panel informs the prisoner whether it will recommend for or against parole.

At petitioner's first institutional hearing (April 1976), entitled "revocation hearing"[3] on the United States Board of Parole Hearing Summary, *see* Document 8, Exhibit E, filed June 9, 1977, the hearing panel revoked petitioner's parole based on the behavior which resulted in his arrest in November 1974 and his guilty plea in January 1975. The panel also discussed petitioner's institutional behavior, his release plans, and his domestic problems. Since no reparole guidelines were in effect at that time, they obviously could not be discussed. In evaluating the review it was stated:

> The panel feels that there is an accountability of at least two years overall for the violation of parole which took place within 2 months of release. The panel, therefore, is constrained to give subject a set-off to measure up to this accountability standard which will call for review later in the year. It is also felt that time (sic) subject if he is given a favorable consideration would be released at a time when job opportunities are again good in this Northern State. United States Board of Parole Hearing Summary, Document 8, Exhibit E, filed June 9, 1977.

At petitioner's December 1976 regular review hearing, the second institutional hearing (held after the enactment of the May 1976 and October 1976 reparole guidelines), he was told that his reparole guideline range was 34–44 months. This is the applicable range under the October 1976 guidelines, see supra. The panel noted that in October of 1976 the prison institution recommended an 18-month set-off. The panel also found that during his entire incarceration petitioner's only misconduct was in

---

**2.** Since the incident of November 1974 involved multiple weapons, petitioner would be in the high offense severity range. *See* 28 C.F.R. §§ 2.21(b)(1) and 2.20. § 2.21(b)(2) would then automatically give petitioner a poor salient factor score (§ 2.21 is the reparole section). This results in the 32–38 month guideline range.

**3.** 28 C.F.R. § 2.50 is the revocation hearing procedure section. According to that section, the purpose of a revocation hearing is to decide whether a prisoner has violated the conditions of his parole, and, if so, whether to revoke or reinstate parole.

July 1975 and that he has maintained an excellent conduct record since that time. It was felt that he was at a turning point in his life and that at his next hearing (June 1978) he would have served 3½ years, "which should certainly satisfy the accountability." It was then decided that a decision outside the guidelines was not warranted. United States Board of Parole Hearing Summary, Document 8, Exhibit F, filed June 9, 1977.

Petitioner contends that the application of the October 1976 reparole guidelines at his second institutional hearing was in contravention of § (B)(4)(d). Reading this pro se petition with the appropriate liberality, the court also construes the petition to contain the allegation that if it was proper as a question of statutory construction to exclude petitioner from the application of § (B)(4)(d), he has been denied the equal protection of the laws. Petitioner also contends that the Parole Commission acted arbitrarily and capriciously when it extended his incarceration beyond the two years mentioned at his first institutional hearing and beyond the eight-month set-off given to him at the same hearing.

It is respondent's position that it was proper to apply the new reparole guidelines to petitioner at his second institutional hearing because § (B)(4)(d), which would prohibit using the new guidelines, applies only to those who had an initial hearing and petitioner's first institutional hearing was a revocation hearing, not an initial hearing. Respondent also contends, in effect, that there is a rational reason not to apply § (B)(4)(d) to those who have not had an initial hearing. Finally, respondent argues that it was the May 1976 reparole guidelines which were applied at petitioner's second institutional hearing. However, this last claim appears to be refuted by the copy of that hearing's summary submitted with respondent's answer. That summary specifically states that petitioner's guideline range is 34–44 months, the range specified by the October 1976 guidelines.

█ Judicial review of a parole decision is appropriate to determine if a denial of parole was inconsistent with the statutory authority, or if there was an abuse of discretion, or if there was a denial of a constitutional right. *See United States ex rel. Harrison v. Pace,* 357 F.Supp. 354 (E.D.Pa. 1973). *Cf. deVyver v. Warden,* 388 F.Supp. 1213 (M.D.Pa.1974). Here the court must first decide, according to the applicable criteria, whether the Parole Commission correctly interpreted and applied its own regulations. If it is decided that the section was correctly interpreted and applied, then the question is whether petitioner has been denied the equal protection of the laws. Finally, it must be determined whether it was arbitrary and capricious not to have paroled petitioner at his second institutional hearing.[4]

█ When a court is faced with the problem of statutory construction, or in this case the problem of the interpretation of an administrative agency regulation, great deference is given to the interpretation which is expressed by the officers or agency charged with administering the regulation. *Cf. Udall v. Tallman,* 330 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). In our case § (B)(4)(d) specifically states that it applies to those who have had an initial hearing. The term "initial hearing" seems to be somewhat of a term of art, for it not only refers to the timing and content of a prisoner's hearing, but also indicates the status of a prisoner who is having the hearing. Only a prospective parolee who has not had any prior hearings can have an initial hearing. A prospective reparolee never has an initial hearing. His first hearing, in terms of reparole, is a revocation hearing. All subsequent hearings are review hearings. Con-

---

**4.** If this case only involved the question of whether denial of parole was appropriate in this particular instance, the inquiry would be limited to whether there was a rational basis for the decision. *See Zannino v. Arnold,* 531 F.2d 687 (3rd Cir. 1976). But we are not simply concerned here with whether the Parole Commission acted rationally in not paroling Mr. Trudo. Rather, our concern is also with the interpretation and application of § (B)(4)(d).

sequently, even if a prospective reparolee's revocation hearing had all the characteristics of an initial hearing, § (B)(4)(d) would not apply. This seems to be what § (B)(4)(d), in conjunction with the guidelines as a whole, states. It is also how the Parole Commission interpreted the regulation. It is not an irrational or arbitrary *interpretation*. Hence, I hold that the interpretation given § (B)(4)(d) by the Parole Commission is proper.

But now the inquiry is whether § (B)(4)(d), as interpreted and applied by the Parole Commission, has denied petitioner the equal protection of the laws. I believe that it has.

■ A threshold question is whether the concept of equal protection, embodied in the Fourteenth Amendment, is applicable to the United States government or its agencies. The Fourteenth Amendment only applies, on its face, to the states. But it has been held, by the United States Supreme Court, that if a classification would not be valid under the equal protection clause of the Fourteenth Amendment, it is also not consistent with the due process requirement of the Fifth Amendment. *See Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). Hence, the concept of equal protection is, in effect, embodied in the Fifth Amendment and applicable to the United States government and its agencies.

■ In order for a governmental regulation not to offend the concept of equal protection, it must be reasonable, not arbitrary, and must rest upon some ground of difference which has a substantial and fair relation to the point of the regulation, so that all persons similarly situated shall be treated alike. *See Royster Guano Co. v. Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920); *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

Since no suspect class is involved here, the standard to be applied, in order to determine whether the distinction drawn by § (B)(4)(d) between those in petitioner's position and those who have had an initial hearing is not offensive to the equal protection clause, is whether there is any rational basis by which it can be seen that the distinction furthers some legitimate governmental purpose. *Cf. McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). Or, are there characteristics peculiar to the group to which petitioner belongs which could rationally explain the regulation's different treatment of the two groups? *See Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

So the court must first determine what the objective of § (B)(4)(d) is. Then the inquiry is whether this objective is furthered by the distinction between petitioner and those who have had an initial hearing, or whether petitioner is differently situated from those who have had this initial hearing, or whether people similarly circumstanced are arbitrarily being treated differently.

The purpose of § (B)(4)(d) is apparent on its face. The idea is that it would be unfair for a prisoner to have had his guideline range[5] and the factors relating to when parole should be granted discussed at a prior hearing, and then to have his guideline range increased, unrelated to any behavior on his part. This notion of fairness would certainly seem to be a legitimate government interest. Now the question is whether there is a rational reason to exclude petitioner from the application of this policy or whether petitioner's particular situation would rationally explain his different treatment.

■ The threshold question is whether petitioner's first institutional hearing, before the enactment of any reparole guidelines, was the functional equivalent of an

---

5. This is tantamount to having his tentative release date discussed. Although the guidelines are only guides, the overwhelming majority of parole decisions fall within the guideline range. *See United States v. Salerno,* 538 F.2d 1005 (3d Cir. 1976).

initial hearing.[6] As stated *supra,* at an initial hearing the examiners discuss a prisoner's guideline range, his institutional conduct, and any other relevant matter. At a revocation hearing,[7] the main concern is whether parole has been violated. It seems obvious that petitioner's first institutional hearing had the characteristics of both a revocation hearing and an initial hearing. While his behavior which constituted the parole violations was discussed and parole was revoked, also discussed were his institutional behavior, his release plans, and the amount of institutional time which should be served to satisfy the "accountability."

■ Respondent argues that since no reparole guidelines were in effect at the time of petitioner's first institutional hearing and hence they could not be discussed, the rationale behind § (B)(4)(d) would not be furthered by its application to petitioner.[8] The argument is that if an actual guideline range is not discussed there is not the same expectation of possible release as when a guideline range is discussed. Hence the notion of fairness embodied in § (B)(4)(d) would not be implicated. But when petitioner was told that there was an accountability term of at least two years overall for his offense he was being told the equivalent of a guideline range. The notion of accountability is a concept embodied in the guidelines. The guidelines appear to represent the movement away from parole being based on institutional behavior and rehabilitation and towards parole being decided according to accountability, retribution and deterrence. The welfare and safety of society is a prime ingredient. *See deVyver*

*v. Warden,* 388 F.Supp. 1213 (M.D.Pa.1974). Although petitioner was not given an upper range, he was being told, in effect, that his guideline range was somewhere in the vicinity of at least two years. As far as I can see, in this regard he was in the same situation as a prisoner who had received an initial hearing.[9]

Given the fact that he was in the same situation as a prisoner who had received an initial hearing, does the fact that he is a prospective reparolee, rather than a prospective parolee, provide a rational reason to exclude petitioner from the application of § (B)(4)(d)? No persuasive reason has been given to support such a position. It might be rational to treat a prospective reparolee harsher than a prospective parolee because he or she has already violated parole, by, for instance, requiring a longer institutional term. However, it does not follow that it would be rational to treat a reparolee unfairly. It has been decided, by the Parole Commission, that it is unfair to apply the Oct. 1976 guideline ranges after a hearing has been had discussing other ranges with a prisoner. I can think of no rational reason for excluding petitioner from the application of § (B)(4)(d). Such exclusion was a violation of equal protection.

■ As to petitioner's last contention, that the Parole Commission acted arbitrarily and capriciously by not paroling him at his second institutional hearing, I find it has no merit. This court does not sit as a "super parole board." Petitioner's first institutional hearing simply gave him a set-off date for review later in the year, it did

6. The fact that petitioner's first institutional hearing is labeled a revocation hearing does not, of course, dispose of the question of what type of hearing it was. Nor can the labeling of a class rationalize a regulatory discrimination. *Cf. Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

7. *See* note 2, *supra.*

8. Although it is true that petitioner did not have an actual guideline range discussed, I think it should be noted that if his first institutional hearing had occurred between the May, 1976 reparole guidelines promulgation and the

October, 1976 increase of those guidelines, he would have had an actual reparole guideline range discussed and § (B)(4)(d) would still not apply.

9. I am not deciding here whether a prisoner has some sort of interest or right when a guideline range is discussed such that said range cannot be raised unilaterally by the Parole Commission. The only question is whether the increased ranges of the October 1976 regulations can be applied to petitioner after the Commission has stated it will not apply them to certain other prisoners.

not set a parole date for December of 1976. As such, the simple fact that parole was not granted at that hearing could not, in and of itself, automatically be considered an arbitrary act. This is, of course, a different question from whether it was a denial of equal protection to exclude petitioner from the application of § (B)(4)(d).

Having decided that petitioner has been denied the equal protection of the laws, the question now is, to what relief is petitioner entitled? If petitioner's first institutional hearing had been after the May 1976 promulgation of reparole guidelines, then it would be obvious that they be applied. However, that was not the case. As stated above, petitioner argues that he should have been paroled at his second institutional hearing, for this was when the two-year accountability for the offense expired. Respondent notes that *at least* two years was the stated accountability term. I agree that two years is not the same as at least two years. Two years was simply a statement of a minimum accountability term. But it also clearly infers that there is a maximum term contemplated somewhere in the vicinity of two years. All the guideline periods for adults not covered by the Narcotic Addict Rehabilitation Act cover a range of from 4 months to 12 months. Given that ranges do not exceed one year, petitioner's highest maximum accountability parole violator term, absent factors which, in a guideline situation, would call for a decision outside the guidelines, would seem to be three years. And, since at petitioner's second institutional hearing it was stated that a decision outside the guidelines was unwarranted, this would seem to be a rational approach. However, Congress has invested the Parole Commission with broad discretion. It is not up to the District Court to make its own parole judgments. *See Zannino v. Arnold,* 531 F.2d 687 (3rd Cir. 1976).

It will be ordered that a writ of habeas corpus shall issue, releasing petitioner from institutional custody, unless within 30 days petitioner is given a new parole hearing. At this new hearing the new reparole guidelines, in effect from October 4, 1976 until the present, may not be applied to petitioner.