Hugh J. ADDONIZIO

v.

UNITED STATES of America,
Appellant in No. 77–1542.

Thomas J. WHELAN, and Thomas M. Flaherty, Appellants in No. 77–1621,

v.

UNITED STATES of America.

Thomas J. WHELAN, # 73405–158, Thomas M. Flaherty, # 73404–158, Appellants in No. 77–2373,

v.

Floyd E. ARNOLD, Warden, U. S. Penitentiary, Lewisburg, Pa., and Maurice H. Sigler, Chairman, United States Board of Parole.

Nos. 77–1542, 77–1621 and 77–2373.

United States Court of Appeals,
Third Circuit.

Argued Jan. 12, 1978.

Decided Feb. 27, 1978.

As Amended April 3, 1978.

Robert J. Del Tufo, U. S. Atty., Newark, N. J., for the United States of America; Maryanne T. Desmond, Chief, Appeals Division, Newark, N. J., on brief.

Scarpone & Edelson, Newark, N. J., for Hugh J. Addonizio; Michael Edelson, Newark, N. J., of counsel and on brief.

Greenspan, Kanarek, Jaffe & Funk, White Plains, N. Y., Ernest Allen Cohen, Hackensack, N. J., Blakinger, Grove & Chillas, P. C., Lancaster, Pa., for appellants Thomas J. Whelan and Thomas M. Flaherty; Leon J. Greenspan, and Joseph D. De-Salvo, White Plains, N. Y., of counsel.

S. John Cottone, U. S. Atty., Scranton, Pa., Joseph F. Cimini, Asst. U. S. Atty., Lewisburg, Pa., for appellees Floyd E. Arnold and Maurice H. Sigler.

Before ALDISERT and HUNTER, Circuit Judges, and CAHN, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

These appeals require us to examine again the propriety of post-sentencing relief under 28 U.S.C. § 2255[1] by a sentencing

---

\* Honorable Edward N. Cahn, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. § 2255. *Federal custody; remedies on motion attacking sentence*

 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral at-

court upon a showing that the sentencing judge's expectations were frustrated by subsequent changes in criteria considered by the Parole Commission granting or denying release. *See* 39 Fed.Reg. 20028–39 (1974), now codified as amended in 28 C.F.R. § 2.20 (1976). In No. 77–1542, the government has appealed from relief granted to Hugh J. Addonizio by the sentencing judge. Appellants Thomas J. Whelan and Thomas M. Flaherty appeal at No. 77–1621 from the judgment of the district court refusing relief requested under § 2255, the decision having been made by a member of the court substituting for the now deceased sentencing judge. They also appeal at No. 77–2373 from a denial of relief in a separate action under 28 U.S.C. § 2241 for reasons that track those asserted in their § 2255 case.

## I.

In the seminal case of *United States v. Salerno*, 538 F.2d 1005 (3d Cir. 1976), this court formulated a rule that resentencing is required in a § 2255 proceeding where implementation of the Parole Commission's guidelines frustrated the sentencing judge's probable expectations in the imposition of a sentence pursuant to 18 U.S.C. § 4208(a)(2).[2] In that case we found that the sentencing judge's intentions had been clearly stated at

the time of sentencing. Subsequently, in *United States v. Somers*, 552 F.2d 108, 113 (3d Cir. 1977), we emphasized that "the intent and expectation of the district court judge who sentences under § 4208(a)(2) . . . are controlling and . . . must be searched out to determine if relief may be ordered under 28 U.S.C. § 2255." Further, we said that "in our judgment, there can be no better evidence of a sentencing judge's expectations or intent than his own statement of those facts," *id.*, and determined that the intent or expectation could be derived from the sentencing judge's statement at the § 2255 hearing. In *United States v. Solly*, 559 F.2d 230 (3d Cir. 1977), we extended the rule of *Salerno* and *Somers* to a sentence imposed pursuant to 18 U.S.C. § 4208(a)(1).

## II.

■ The threshold question of jurisdiction is critical to our analysis. The government argues here, as it did in previous cases before us, that a sentencing court has no jurisdiction to reduce a sentence after the period of 120 days after sentence or final unsuccessful appeal, as provided in Fed.R. Crim.P. 35,[3] *United States v. Robinson*, 361 U.S. 220, 226, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960); *United States v. Robinson*, 457 F.2d

tack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

2. *§ 4208. Fixing eligibility for parole at time of sentencing*
 (a) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine.

· · · · ·

This provision has been recodified with minor alteration of language, at 18 U.S.C. § 4205(b). We will refer to it as § 4208(a), as it was codified at the time of imposition of sentence.

3. *Rule 35.*

CORRECTION OR REDUCTION
OF SENTENCE
The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law.
As amended Feb. 28, 1966, eff. July 1, 1966.

1319 (3d Cir. 1972); *see also United States v. Olds*, 426 F.2d 562, 565 (3d Cir. 1970). The applications for relief here were made beyond the 120 day period.

We have previously rejected the government's contention that Rule 35 was the exclusive jurisdictional avenue for sentence reduction. *United States v. Salerno, supra*, 538 F.2d at 1008 n.4. Because the government repeatedly presents the Rule 35 contention, notwithstanding that the *Salerno* rule is now settled case law for the district courts in this circuit, it may be useful to explain the distinct bases of a district judge's authority under Rule 35 and § 2255 respectively. Rule 35's provision that a court "may reduce a sentence within 120 days" vests virtually unlimited power in the court to reduce the sentence without the necessity of any finding that the original sentence is subject to collateral attack or is otherwise contrary to law. By contrast, § 2255 vests in the sentencing court discrete jurisdiction to entertain a motion "to vacate, set aside, or correct" a sentence "at any time", and provides that where the court concludes it "was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack", the court has the power to "discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate".

It should be readily apparent that although the district court has broad discretion under Rule 35 to reduce an otherwise legal sentence within the appropriate 120 days, relief under § 2255 is independently available if any of the specified reasons exists. *See Kills Crow v. United States*, 555 F.2d 183, 188 (8th Cir. 1977). We reiterate the position of this circuit, originally expressed in *Salerno*, and repeated in *Somers*, that sentencing courts do have jurisdiction to entertain the § 2255 motions presented in these appeals.[4]

### III.

Before analyzing the specific factual backgrounds of the several appeals presented here, it is necessary to address the government's second major contention common to all the appeals before us. It argues that because *Salerno* and *Solly* involved sentences imposed pursuant to 18 U.S.C. § 4208(a), these cases may not serve as precedent for attacks on the sentences involved in the present appeals, which were imposed pursuant to 18 U.S.C. § 4202.[5]

### A.

Our beginning point is a recognition that the *Salerno* holding was a legal rule in the narrow sense, in the Pound formulation, a legal precept "attaching a definite detailed legal consequence to a definite, detailed state of facts."[6] Nevertheless we expanded its reach to a different set of facts in *Somers* (where the intention of the sentencing judge was expressed at the § 2255 hearing and not at the time of sentence) and extended it yet further in *Solly* (to a § 4208(a)(1) sentence). Thus, from an origi-

4. Faced with a claim for relief based upon frustration of a district court's sentencing expectations by the subsequent change in Parole Policy Guidelines, the Eighth Circuit determined that the case came within the collateral attack clause of § 2255. *Kortness v. United States*, 514 F.2d 167, 170 (8th Cir. 1975), cited with approval in *Salerno, supra*, 538 F.2d at 1008 n.4.

5. *§ 4202. Prisoners eligible*

A Federal prisoner, other than a juvenile delinquent or a committed youth offender, wherever confined and serving a definite term or terms of over one hundred and eighty days, whose record shows that he has observed the rules of the institution in which he is confined, may be released on parole after serving one-third of such term or terms or after serving fifteen years of a life sentence or of a sentence of over forty-five years. This provision was subsequently repealed, Pub. L. 94–233, 90 Stat. 219 (1976); a substitute provision enacted at that time is codified at 18 U.S.C. § 4205(a).

6. R. Pound, *Hierarchy of Sources and Forms in Different Systems of Law*, 7 Tul.L.Rev. 475, 482 (1933). "Rules are fairly concrete guides for decision geared to narrow categories of behavior and prescribing narrow patterns of conduct." G. Hughes, *Rules, Policy and Decisionmaking*, 77 Yale L.J. 411, 419 (1968).

nal holding we have seen, in Cardozo's words, "[t]he directive force of a principle . . . exerted along the line of logical progression . . . ."[7] The answer to the government's contention, therefore, requires an inquiry into the instrumental principles that influenced the creation of the *Salerno* rule, and its subsequent extension to *Somers* and *Solly*. Only with these principles identified can we determine whether they can be applied to the cases before us.

 Upon analysis we find that the major principle influencing these decisions was that a sentencing judge's intent and probable expectations should be vindicated to the fullest extent possible. The moral support[8] for this precept is self-evident. It is the sentencing judge—and no other judicial or administrative tribunal—who sets the maximum limits of any sentence. So long as the maximum comes within the statutory limits and the sentencing process follows appropriate procedures, there can be no judicial review of the sentence he pronounces. *Gov't. of the Virgin Islands v. Richardson*, 498 F.2d 892 (3d Cir. 1974). The rationale underlying this broad discretion afforded the sentencing judge is the same as that supporting the latitude given the trial judge in his other discretionary functions, namely, "the superiority of his nether position. It is not that he knows more than his loftier brothers; rather, he sees more and senses more." M. Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above*, 22 Syracuse L.Rev. 635, 663 (1971). Given this near-absolute control over maximum punishment, it would necessarily follow that the sentencing judge's intentions and expectations as to actual time of incarceration should be vindicated to the greatest extent possible. The Parole Commission's decision was based on a set of guidelines which was not in effect at the time of sentencing. Under

circumstances where the prisoner is required to serve an appreciably longer term of imprisonment because these subsequently adopted parole guidelines effect a provable frustration of those intentions and expectations, regard for the integrity of the sentencing court, as well as concepts of decency and fair play, dictate that that court should be in a position to vindicate those original intentions and expectations.

 Woven in the texture of a legal principle, these moral considerations take the form of a right of a prisoner to relief upon proof that the sentencing judge's intentions and expectations regarding the prisoner's incarceration have been frustrated by a post-sentencing change in criteria governing parole determinations.

*B.*

 So postulating the instrumental legal principle that led to the various results in *Salerno, Somers,* and *Solly,* it should be readily discernible that the controlling determinant is not necessarily the specific statute pursuant to which the sentence was imposed, but rather, whether the facts disclose an expression of the sentencing judge's intentions and expectations and a subsequent frustration thereof by the change in guidelines. Thus, because the facts did so disclose in *Solly,* we had no difficulty in applying the principle that had previously commanded relief from a § 4208(a)(2) sentence in *Salerno* to a sentence imposed pursuant to § 4208(a)(1). We must now determine whether there exists a fundamental distinction between a § 4208(a)(1) sentence and one imposed pursuant to § 4202 so as to command a different result here.

 The starting point for this analysis is the relevant part of § 4202 which provides that a prisoner "whose record shows that he has observed the rules of the insti-

---

7. B. Cardozo, The Nature of the Judicial Process 30 (1921).

8. We use the term "moral" in the sense of conventional morality. *See* H. L. A. Hart, The Concept of Law 165 (1961), for the thesis that

legal principles derive from conventional morality, conceptualized as standards of conduct "which are widely shared in a particular society."

tution in which he is confined, may be released on parole after serving one-third of such term . . . ." Interpreting this statute in *Berry v. United States,* 412 F.2d 189, 192 (3d Cir. 1969), we said:

> In any normal sentencing procedure in the federal courts, a sentence prescribing a number of years of imprisonment generally means that the defendant may expect to serve approximately one-third of this term *with good conduct.* Probation and parole are concepts which our society have come to accept as natural incidents of rehabilitation during imprisonment.

(Emphasis supplied).

We could say this in 1969, because like the sentencing judges in the present appeals we knew that prior to 1970, the Parole Board relied on the criteria of former 18 U.S.C. §§ 4202 and 4203: (1) observation of the rules of the institution in which the prisoner is confined; (2) a reasonable probability that the prisoner will live and remain at liberty without violating the laws; and (3) release not incompatible with the welfare of society. *See* 28 C.F.R. § 2.2 (1971). We were also familiar with the views generally held by the sentencing judges in this circuit. Thus, the sentencing judge in *Somers* wrote: "Prior to the adoption of the new guidelines which are now in effect, and which became effective in late 1973, the Parole Board based its decision primarily upon institutional behavior and the probability of recidivism. *See* [28] C.F.R. § 2.4 (1973)." 552 F.2d at 112. And in *Salerno* we emphasized the importance of "district court sentencing practice." 538 F.2d at 1008. Thus, prior to the imposition of the new Parole Commission guidelines, both this court and the sentencing courts in this circuit operated under the assumption that, given a good institutional record, and aside from a finding of probable recidivism, the Parole Board would generally grant parole upon the completion of one-third of the sentence to any prisoner sentenced under § 4202.

This being so, there is no basic distinction between a sentencing judge's expectation of service of one-third of the sentence under § 4202, as generally perceived by our trial and appellate judges, and service of a specific minimum period of incarceration imposed under § 4208(a)(1). If the *Salerno* rule were supported by sufficient and perceptible reason so as to apply it to *Solly's* § 4208(a)(1) sentence, no meaningful reason can be advanced for not applying the same rule for the same reason to a sentence imposed pursuant to § 4202. Thus, in Karl Llewellyn's words, "the rule follows where its reason leads; where the reason stops, there stops the rule." [9]

### IV.

We turn now to the Addonizio case. Originally sentenced to ten years incarceration by Judge Barlow, he began serving his sentence on March 6, 1972. At the time Judge Barlow granted him release on April 28, 1977, he had served five years and two months of his ten-year sentence, considerably more than the 3⅓ years constituting the one-third usually associated with a § 4202 sentence.

On December 22, 1976 the Parole Commission had denied parole, stating this reason: "Pursuant to CFR 2.17 your offense behavior was part of a large scale criminal conspiracy or a continuing criminal enterprise." App. at 39. On January 13, 1977 the Commission again denied parole, stating:

> Your offense behavior has been rated as very high severity. Your salient factor score is 11. You have been in custody a total of 57 months at time of hearing. Guidelines established by the Commission for adult cases which consider the above factors suggest a range of 26–36 months to be served before release for cases with good institutional adjustment. After careful consideration of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense was part of an ongoing criminal conspiracy lasting from 1965 to 1968, which consisted of many

**9.** K. Llewellyn, The Bramble Bush 157–58 (1960).

separate offenses committed by you and approximately 14 other co-conspirators. As the highest elected official in the City of Newark, you were convicted of an extortion conspiracy in which, under color of your official authority, you and your co-conspirators conspired to delay, impede, obstruct, and otherwise thwart construction in the City of Newark in order to obtain a percentage of contracts for the privilege of working on city construction projects.

Because of the magnitude of this crime (money extorted totalling approximately $241,000) its economic effect on innocent citizens of Newark, and because the offense involved a serious breach of public trust over a substantial period of time, a decision above the guidelines is warranted. Parole at this time would depreciate the seriousness of the offense and promote disrespect for the law.

App. at 27–28.

An earlier July 8, 1975 application had been rejected by the United States Board of Parole for the same reasons.

The Parole Commission's ostensible rationale in denying parole must now be placed in juxtaposition with the reasons stated by the sentencing court in originally imposing the ten-year sentence:

THE COURT:

.　.　.　.　.

Weighed against these virtues, [Mr. Addonizio's record of public service] . . is his conviction by a jury in this court of crimes of monumental proportion, the enormity of which can scarcely be exaggerated and the commission of which create the gravest implications for our form of government.

Mr. Addonizio, and the other defendants here, have been convicted of one count of conspiring to extort and 63 substantive counts of extorting hundreds of thousands of dollars from persons doing business with the City of Newark. An intricate conspiracy of this magnitude, I suggest to you, Mr. Hellring [defense counsel], could have never succeeded without the then-Mayor Addonizio's approval and participation.

These were no ordinary criminal acts. . . . These crimes for which Mr. Addonizio and the other defendants have been convicted represent a pattern of continuous, highly-organized, systematic criminal extortion over a period of many years, claiming many victims and touching many more lives.

Instances of corruption on the part of elected and appointed governmental officials are certainly not novel to the law, but the corruption disclosed here, it seems to the Court, is compounded by the frightening alliance of criminal elements and public officials, and it is this very kind of totally destructive conspiracy that was conceived, organized and executed by these defendants.

.　.　. It is impossible to estimate the impact upon—and the cost of—these criminal acts to the decent citizens of Newark, and, indeed, to the citizens of the State of New Jersey, in terms of their frustration, despair and disillusionment.

.　.　.

Their crimes, in the judgment of this Court, tear at the very heart of our civilized form of government and of our society. The people will not tolerate such conduct at any level of government, and those who use their public office to betray the public trust in this manner can expect from the courts only the gravest consequences.

.　.　.　.　.

It is, accordingly, the sentence of this Court that the defendant Hugh J. Addonizio shall be committed to the custody of the Attorney General of the United States for a term of ten years, and that, additionally, the defendant Hugh J. Addonizio shall pay a fine of $25,000. That is all.

App. 23–26.

A fair reading of the reasons given by the Parole Commission for denying parole clearly shows that they are identical with those stated by the court in justification of the hefty ten-year sentence—because Ad-

donizio participated in an intricate conspiracy of great magnitude, representing "a pattern of continuous, highly-organized, systematic criminal extortion." Judge Barlow stated that as a sentencing judge he "obviously took the nature and circumstances of the offense into account when the petitioner was sentenced, and deliberately imposed a harsh penalty to reflect the seriousness of the crime." App. at 11. He concluded, however, that the Parole Commission had changed the rules of the game after sentence was pronounced, to-wit, "there now seems to be a very much heightened emphasis on 'the nature and circumstances of the offense.' *See, e. g.*, 28 C.F.R. § 2.18 (1976). Compare 28 C.F.R. § 2.2 (1971) . . . ." App. at 10. As Judge Barlow observed in granting § 2255 relief—resentencing Addonizio for the precise time then spent in imprisonment—the Parole Commission did not take into consideration the prisoner's "excellent institutional record and a very low likelihood of recidivism."

Thus, it appears that the very "nature and circumstances of the offense" which generated a deliberate imposition of "a harsh penalty" are now being used by the Parole Commission to deny the parole which was anticipated in the imposition of the original penalty. Traditional standards of criminal justice reject this apparent double punishment for the same factor—one punishment imposed by the sentencing court, the other by the Parole Commission. Judge Barlow realized this, and fashioned his order accordingly. For this reason, we will affirm the judgment of Judge Barlow granting relief to Addonizio under § 2255. "In our judgment, there can be no better evidence of a sentencing judge's expectations or intent than his own statement of those facts." *Sommers, supra,* 552 F.2d at 113. Judge Barlow stated in relevant part:

The Court anticipated—assuming an appropriate institutional adjustment and good behavior while confined—that petitioner would be actually confined for a period of approximately three and one-half to four years of the ten year sentence, in view of the fact that he was a first-offender and that there appeared to be little probability of recidivism, given the circumstances of the case and his personal and social history. This sentencing expectation was based on the court's understanding—which was consistent with generally-held notions—of the operation of the parole system in 1970.

. . . [T]he new emphasis on the nature and circumstances of the offense, in conjunction with other aspects of the new parole standards and procedures, has resulted in the frustration of this Court's sentencing expectations and intent.

App. at 10–11 (footnotes omitted).

The government would have us disregard the facial inequity of these circumstances by contending that Addonizio may not benefit from the *Salerno* rule, because here the Commission did not apply the guidelines (which would have released him after 26–36 months of incarceration) but instead applied a separate factor: "the offense behavior". The government's argument entirely misses the substance of Judge Barlow's position—at the time he sentenced Addonizio he assumed that the parole authorities would consider only institutional behavior and recidivism as parole factors, as then set forth in 18 U.S.C. § 4203; subsequently, the rules were changed; now an important factor is the "nature and circumstances of the offense." 28 C.F.R. § 2.18 (1976). Society cannot have it both ways; it cannot expose one to a harsh maximum—a ten-year term for what is considered to be a 26–36 month offense, and then, years later, for precisely the same reason which caused the harsh maximum to be imposed, impose a doubly harsh minimum.[10]

---

10. In *Musto v. United States,* 571 F.2d 136 (3d Cir. No. 77–1239), we declined an invitation to extend the rule of *Salerno* under circumstances where the sentencing court had knowledge of the existence of the new Parole Policy Guide-

lines. Addonizio, however, was sentenced under a widely-held belief that the Parole Board would not deny parole based on its independent assessment of the severity of the offense where

## V.

█ In their appeals, Whelan and Flaherty similarly assert that the Parole Commission's denial of release based upon the nature of their offenses frustrates the intent of the sentencing judge. We first consider appeal No. 77–1621 from Judge Biunno's denial of § 2255 relief. We are disinclined to accept the invitation to examine the statements of Judge Shaw, the sentencing judge who is now deceased. We believe that this determination is for the district court in the first instance. Yet we are not content to accept Judge Biunno's examination of that transcript and conclusions thereafter reached. We believe that the § 2255 hearing judge should have the benefit of the rule this court announces today— that the *Salerno* rule does apply to sentences imposed pursuant to § 4202. Judge Biunno held otherwise, stating: "The *Silverman (Salerno)* case has no application here". Under these circumstances, the judgment of the district court must be vacated and the proceedings remanded.

Because the proceedings will be remanded, it is necessary to comment further on Judge Biunno's reasoning. We have heretofore delineated with specificity the issue to be determined in a § 2255 proceeding— whether there was a frustration of the intentions or the expectations of the sentencing judge by reason of new parole criteria. Judge Biunno's statement that "[t]he real issue is whether the Commission's denial of parole was arbitrary and capricious" was clearly wrong, for he confused the issue presented in a 28 U.S.C. § 2241[11] proceeding, which was not properly before him, with the § 2255 issue which was.

█ In contrast, the appeal of Whelan and Flaherty at No. 77–2373 is taken from Judge Muir's denial of relief under § 2241, and requires a review of the Parole Commission's determination. The proper standard of review was stated by Judge Muir:

the sentencing judge expressly based his sentence on the severity.

**11.** *§ 2241. Power to grant writ*

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof,

[T]he gist of this complaint is that the decision of the Parole Board to continue them past the amount of time that the guidelines suggest that they serve was without a rational foundation. In *Zannino v. Arnold*, 531 F.2d 637 [687] (3d Cir. 1976), the Court set forth the procedures to be followed by a district court in reviewing the sufficiency of a determination by the Parole Board to deny an inmate's request for release. The Court stated that 28 C.F.R. § 2.13 required that the Board furnish sufficient reasons for their decision to the inmate in order to afford him a chance to challenge the adequacy of those reasons. Once a sufficient statement has been given, the Court's function is to determine only if the Board abused its discretion and the relevant inquiry is "whether there is a rational basis in the record for the Board's conclusion." *Zannino*, 531 F.2d at 690–91.

(22a.)

We find no error in Judge Muir's application of the legal precepts to the record before him.

It bears emphasis, however, that the affirmance of Judge Muir's decision in the § 2241 proceeding is not *res judicata* as to the § 2255 proceeding which we remand to Judge Biunno, for as previously emphasized, the thrust of the § 2255 proceeding is not a review of the Parole Commission's decision *per se*, but a *de novo* inquiry into whether there was a frustration of the sentencing court's intentions and expectations.

## VI.

Accordingly, the judgment of the district court in the Addonizio case at No. 77–1541 and the judgment of the district court in the Whelan and Flaherty appeal at No. 77–2373 will be affirmed. The judgment of the district court at No. 77–1621 will be

the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

vacated and the cause remanded for reconsideration in light of the foregoing opinion.