**UNITED STATES of America, Appellant,**

v.

**William T. SOMERS et al.**

**No. 76–2009.**

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1976.

Decided Feb. 25, 1977.

Jonathan L. Goldstein, U. S. Atty., for appellant; Maryanne T. Desmond, Asst. U. S. Atty., Newark, N. J., on brief.

Ralph J. Kmiec, Cherry Hill, N. J., for Arthur W. Ponzio, appellee.

Before FORMAN, ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

In this appeal we are called upon to review the question which we had previously —and, as now appears, erroneously—stated should need no review.

In *United States v. Salerno, (Appeal of William Silverman)*, (hereinafter *"Silverman I"*), 538 F.2d 1005 (3d Cir. 1976), Judge Rosenn, writing for this Court, held: (1) that 28 U.S.C. § 2255 provides jurisdiction to challenge a sentence imposed under 18 U.S.C. § 4208(a)(2) prior to the adoption of the 1973 Parole Guidelines,[1] when the intent of the sentencing judge is frustrated by the application of those guidelines; and (2) that because the intent of Silverman's sentencing judge was thwarted by the implementation of the guidelines, Silverman's original sentence could be modified.

In Silverman's case the intent of the original sentencing judge (who was no longer a member of the district court when Silverman sought resentencing) could be ascertained only by interpreting and construing the sentencing colloquy appearing in the sentencing transcript. Forecasting that such a circumstance—unavailability of the original sentencing judge—would be a rare one, Judge Rosenn wrote:

> We do not believe that our holding will seriously burden either the district court or this court. *Where the motion to vacate sentence can be directed to the sentencing judge, the question whether his sentencing expectations have been frustrated is easily resolved and there should be no need for review of that decision in the Court of Appeals.* In the rare case,

as here, when the original sentencing judge is no longer on a district court bench, and the record convincingly shows by the statement of the trial judge at sentencing that he intended to have the defendant receive meaningful parole consideration, then we believe that resentencing should be required. [emphasis supplied.]

*Silverman I*, 538 F.2d at 1009.

We now face the very circumstance foreseen by Judge Rosenn where the district court judge who (1) sentenced the defendant Ponzio on May 21, 1973, (2) was informed of the "new" Parole Guidelines, (3) found his original intent to have been frustrated by those guidelines, and (4) vacated the sentence under authority of *Silverman*. Believing that the original sentencing judge is in the best position to know his own intent and that his determination of that intent is conclusive, we affirm the order of the district court reducing Ponzio's sentence. In so doing, however, we do not relax or depart from the narrow holding of *Silverman I* as interpreted by the same panel of this Court which denied rehearing in *Silverman II*.[2]

### I.

On March 8, 1973, appellee Ponzio was convicted with others of various counts of an indictment which, among other things, charged Ponzio with acts of extortion in violation of 18 U.S.C. § 1951 (The Hobbs Act) and § 1952 (The Travel Act).

On May 21, 1973, Ponzio was sentenced on Count I (conspiracy to violate The Hobbs Act) to prison for a term of six years . . . . [P]ursuant to the provisions of Title 18 U.S.C. § 4208(a)(2), defendant to

---

1. Section 4208(a)(2) reads, in pertinent part:

   (a) Upon entering a judgment of conviction . . . requir[ing] that the defendant be sentenced to imprisonment for a term exceeding one year, . . .
   (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine.

The 1973 Parole Guidelines were published for the first time in the Federal Register on November 19, 1973. 28 C.F.R. § 2.52, 38 F.R. 31942 (Nov. 19, 1973).

2. *United States v. Salerno (Silverman II)* 542 F.2d 628 (3d Cir. 1976) (Sur Petition for Rehearing).

be eligible for parole at such time as the Board of Parole shall determine.

Judgment of sentence, May 21, 1973.

His conviction on 15 other counts resulted in terms of five year imprisonment on each count, concurrent with each other count, and concurrent with the sentence imposed on Count I. In sum, therefore, although Ponzio faced a total term in prison of six years, the Parole Board had the discretion to release him on parole at any time.

Ponzio's conviction was affirmed by this Court on May 31, 1974, *United States v. Somers*, 496 F.2d 723 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974).[3] As noted, the Supreme Court of the United States denied certiorari on October 15, 1974.

On November 19, 1974, Ponzio commenced serving his sentence and, thereafter, pursuant to a timely motion under Rule 35, F.R.Crim.P., made application for reduction of his sentence. On January 13, 1975, the judge who originally sentenced Ponzio reduced his sentence from six to five years imprisonment.

■ Thereafter, on July 26, 1976, Ponzio wrote a letter again seeking relief from his sentence. Treating that letter as a motion pursuant to 28 U.S.C. § 2255, on August 6, 1976, the original sentencing judge on authority of *Silverman I*[4] granted Ponzio's motion, vacated his sentence and resentenced him to time served. The government thereupon applied for a stay of the

district court's order, and sought to return Ponzio to custody. Both of the government's motions were denied.[5] This appeal followed.[6]

II.

■ Our analysis begins with, and is controlled by *Silverman I* and *II*. *Silverman I*, relying upon the "legislative history of section 4208(a)(2) and district court sentencing practice thereunder," [7] held that where the implementation of the guidelines frustrated the sentencing judge's probable expectation (with respect to the original sentence imposed, viewed at the time of imposition), resentencing was required.

We recognize that the problem presented in *Silverman I* was that of ascertaining the intent of the original sentencing judge who was no longer available (in a sentencing context) to reveal his own prior intent. That problem, however, does not confront us here.

In this case, the district court judge who originally sentenced Ponzio on May 21, 1973 to a six year term under § 4208(a)(2) not only was available to rule on Ponzio's § 2255 proceeding, but he was also able, in an unequivocal fashion, to explain his May 1973 sentencing intent and expectations.

It is true that when Ponzio was sentenced on May 21, 1973, the only indication of the sentencing judge's intent was the imposition of sentence pursuant to § 4208(a)(2). However, the very selection of that statute

---

3. A more detailed history of the facts and trial leading to Ponzio's conviction may be found in *United States v. Somers*, 496 F.2d 723 (3d Cir. 1974).

4. *United States v. Salerno* (*Silverman I*) 538 F.2d 1005 (3d Cir. 1976). *Silverman I* was filed on July 15, 1976.

5. In light of our disposition we have no occasion to comment upon the district court's actions in denying a stay of its order and refusing to return Ponzio to custody pending action on the government's appeal.

6. The order from which the government appealed was not entered in a criminal proceeding, but rather in a § 2255 proceeding. Such an

action is not a proceeding in the original criminal prosecution, but is rather an independent civil suit. *Heflin v. United States*, 358 U.S. 415, 418 n.7, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). Accordingly, the action, being civil in nature, is governed by the rules, statutes and appellate practice, (*United States v. Hayman*, 342 U.S. 205, 209 n.4, 72 S.Ct. 263, 96 L.Ed. 232 (1951)) controlling civil actions. *See Neely v. United States*, 546 F.2d 1059 at 1064–1067 (3d Cir. 1976); Wright and Miller, Federal Practice and Procedure § 590 (1969). *See also United States v. DiRusso*, 548 F.2d 372, (1st Cir. 1976) (*DiRusso II*).

7. 538 F.2d at 1008.

as a sentencing vehicle, a choice made prior in time to the promulgation of the new guidelines, is significant. Without more, it tells us that the sentencing judge implicitly expected (and indeed, provided the mechanism for) early parole eligibility, conditioned only upon the Parole Board's satisfaction with Ponzio's institutional adjustment and rehabilitation progress. *Silverman I, supra*; *see also Garafola v. Benson*, 505 F.2d 1212, 1218 (7th Cir. 1974); *Lambert v. United States*, 392 F.Supp. 113, 117 n.2 (N.D.Ga.1975). It is also true that during the Rule 35 hearing,—and indeed, during the entire period between May 1973 and August 1976,—no other expression of intent or expectation was voiced by the sentencing judge. It was only at the August 6, 1976 hearing in connection with Ponzio's § 2255 proceeding, that the district court judge for the first time expressly addressed the subject of his original sentencing expectations and intent.

**8.** While we recognize that the Rule 35 hearing came well after the implementation of the new Parole Guidelines, and that Ponzio's moving papers referred to, and included a copy of the Guidelines, we nevertheless are not persuaded that these circumstances require that relief be denied to this § 2255 application. While counsel undoubtedly had the "tools" (Guidelines) in his hands to fashion a remedy for Ponzio, he did not draw the district court judge's attention to the issue of the impact which the Parole Guidelines had upon Ponzio's initial sentence. *Compare DiRusso II,* note 6 *supra.*

Even the government does not contend that any reliance (if such there was) upon the Guidelines in a Rule 35 hearing would thereby "exhaust" § 2255 jurisdiction under *Silverman I.* The most that can be argued, granting that the district court had jurisdiction (*see* n.9 *infra*), is that the court abused its discretion in affording § 2255 relief on the same grounds as had been urged in a Rule 35 hearing. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) precludes any mechanistic application of the doctrine of *res judicata* in successive § 2255 proceedings. *Sanders* establishes those circumstances under which the district court may give weight to a prior denial of § 2255 relief. 373 U.S. at 15, 83 S.Ct. 1068. In emphasizing that the *Sanders* test is "the ends of justice", Justice Brennan concluded, *id.* at 17, 83 S.Ct. at 1078, that

> No matter how many prior applications for federal collateral relief a prisoner has made, the principle elaborated in Subpart A, supra, [Successive Motions on Grounds Previously Heard and Determined] cannot apply if a

▪ As we have previously observed, directly after Ponzio had commenced serving his six year sentence in November 1974, he had moved to reduce his sentence under F.R.Crim.P. 35. The Parole Guidelines had been public knowledge for about one year at that time, and while Ponzio's application for reduction of sentence did not directly advance the *Silverman* theory presently relied upon, Ponzio's motion papers referred tangentially to the Guidelines in connection with a discussion of the sentence of a codefendant. Essentially, Ponzio's Rule 35 application dealt with disparity in sentences between Ponzio and his codefendants, hardship on Ponzio's family, and arguments addressed to rehabilitation and to the purposes of imprisonment (all of which Ponzio claimed to have satisfied or discharged). As a result of this application, the same judge who had originally sentenced Ponzio to six years imprisonment reduced his sentence to five years, but without opinion or comment.[8]

> different ground is presented by the new application. So too, it cannot apply if the same ground was earlier presented but not adjudicated on the merits. In either case, full consideration of the merits of the new application can be avoided only if there has been an abuse of the writ or motion remedy; and this the Government has the burden of pleading.

We believe that where the prior application for relief has been made under Rule 35, the *Sanders res judicata* criteria are the same. *United States v. Jasper*, 481 F.2d 976, 978–80 (3d Cir. 1973).

We are satisfied (1) that the same ground that formed the basis for the § 2255 decision (new Parole Guidelines) was not relied upon by the district court when it reduced Ponzio's sentence from six to five years; and that therefore (2) the district court did not abuse its discretion.

We cannot help but observe that at no time during the Rule 35 proceedings, was any reference to the Guidelines made by the district court. Moreover, a one year reduction in sentence, from six to five years, had no practical impact whatsoever on Ponzio's sentence, for the Parole Guidelines relative to Ponzio's offense, as cited to the court by Ponzio's attorney, indicated that, depending upon his parole prognosis, Ponzio would serve between 26 and 36 months. Supplemental Memorandum in Support of Motion for Reduction of Sentence, Cr. No. 323–72, at 3 (received at request of the Court). This latter circumstance, if no other, leads us to conclude that the Guidelines argument was never fairly presented to the district court at the Rule 35 hearing.

It was in this setting that *Silverman I* was filed by this Court on July 15, 1976. On July 26, 1976, Ponzio sent a letter to the sentencing judge seeking relief from further imprisonment. Viewing that letter as a petition under § 2255, argument was scheduled by the court on August 6, 1976.

It was then, for the first time, that what had been implicit in the district court's sentence, became explicit. The district court said:

> . . . [B]ut sentence originally was imposed in May of 1973 and as pointed out in the opinion of the *U. S. v. Salerno* in late 1973, which was some period of time after the sentence was originally imposed upon you, the Board of Parole adopted new criteria and procedures for parole determinations. *Those standards were not within the contemplation of this Court at the time that sentence was imposed upon you when the Court's sentence was that you be sentenced pursuant to the provisions of Section 4208 A2.* [emphasis supplied.]
>
> I may have indicated to you at that time, although I do not have the transcript before me, but I do know that there have been many, many times that defendants have appeared before this Court and I have indicated the liberality of that proceeding and have indicated that as long as you behaved yourself while in custody and demonstrated that you have been rehabilitated and ready to be returned to society, the Board of Parole would give you every consideration. As a matter of fact, numerous inmates have clamorously requested that sentences imposed be changed to § 4208 A2; because they felt that they would get earlier parole. That clamor had considerably subsided because it has been indicated to me as well as to many other federal judges that early parole is not being given under the new standards, procedures, and regulations adopted by the Board of Parole.
>
> \* \* \* \* \* \*
>
> Now, also, at the time that I originally imposed sentence upon you and at the time that that sentence was reduced, I was clearly under the impression that the factors to be considered by a Parole Board would be whether you've paid your debt to society, how you behaved while you were in your institution, what the chances were of returning you to society, whether you have been rehabilitated. Those were the old standards. Now they have the new standards and it could be that you would serve maybe four years by the time the Parole Board made up its mind what to do.
>
> \* \* \* \* \* · \*
>
> As I've indicated further, I don't see eye to eye with this computerized, statistical, and generalized consideration of parole. *My sentencing expectations have been frustrated by the Board's new guidelines and their procedures and their salient factors.* And for those reasons, as well as for the more important reason that I am not without compassion, I think you've paid your debt to society. I think your family has been under a considerable strain, and I'm going to vacate the prior sentence that was imposed upon you and a new sentence will be imposed of the time you have already served, and I would sign an order to that effect, which I have before me. [emphasis supplied.]

Transcript, August 6, 1976, pp. 12–13, 14, 18–19.

In the final but unreported opinion which followed the August 6, 1976 hearing, but which incorporated the oral observations made at that hearing as they depicted his motivating factors, the district court judge wrote:

> . . . [T]he legislative history of § 4208(a)(2) is comprehensively discussed in the *Salerno* opinion, and there is no need to repeat that history here. Prior to the adoption of the new guidelines which are now in effect, and which became effective in late 1973, the Parole Board based its decision primarily upon institutional behavior and the probability of recidivism. *See* C.F.R. § 2.4 (1973). Those

were the criteria which were in effect at the time this defendant was sentenced, and with which this court was familiar when sentence was imposed. It was also this court's understanding that a defendant sentenced under § 4208(a)(2) would become immediately eligible for parole after sentence had been imposed. This is in sharp contrast to the other sentencing options available to a federal judge. See 18 U.S.C. § 4202, and 18 U.S.C. § 4208(a)(1).

\* \* \* \* \* \*

It was the expectation of this court when the defendant was sentenced that he would receive early meaningful consideration for parole. The adoption of the new parole guidelines subsequent to the time of sentencing has frustrated that expectation. In fact, prior to the adoption of the new parole guidelines, this court was regularly inundated with requests from defendants and their counsel for sentences under § 4208(a)(2). Such requests are no longer made, largely, we think, because of the new guidelines. Not only does the *Salerno* opinion provide a jurisdictional basis upon which this court may act, the judicial conscience requires corrective action.

Op. August 25, 1976, pp. 3–4, 7.

### III.

As we read *Silverman I* and *II,* it is the intent and expectation of the district court judge who sentences under § 4208(a)(2) which are controlling and which must be searched out to determine if relief may be ordered under 28 U.S.C. § 2255.[9] In our judgment, there can be no better evidence of a sentencing judge's expectations or intent than his own statement of those facts.

We are aware that here the sentencing judge not only attributed the thwarting of his sentencing intent and expectations to

---

**9.** 28 U.S.C. § 2255 provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In *Silverman I,* 538 F.2d at 1008 n.4, this Court, on the jurisdictional aspect, held:

The district judge also concluded and we agree that 28 U.S.C. § 2255, which provides in relevant part that a district court has jurisdiction of a motion "to vacate, set aside, or correct" a sentence imposed without jurisdiction, "in excess of the maximum authorized by law, or . . . otherwise subject to collateral attack," is an appropriate vehicle for making this claim. *See Kortness v. United States, supra,* 514 F.2d [167,] 170 [(8th Cir. 1975)]; *United States v. Perchalla,* 407 F.2d 821, 823 (4th Cir. 1969). *Cf. United States v. Hayman,* 342 U.S. 205, 216–19, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

*See also Jacobson v. United States,* 542 F.2d 725 (8th Cir. 1976); *United States v. Clinkenbeard,* 542 F.2d 59 (8th Cir. 1976).

On the surface it would appear that the First Circuit would disagree with our *Silverman* jurisdictional holding. *See DiRusso II* note 6 *supra; United States v. DiRusso,* 535 F.2d 673 (1st Cir. 1976). However, a close reading of *DiRusso II* reveals that the question presented in *Silverman* and here has not yet been presented to that Court. *See DiRusso II,* at 375 n.2. A distinction is made in *DiRusso II* between those cases where "the sentences that were collaterally attacked had been imposed either *prior to* or *contemporaneously with* the promulgation and general awareness" of the new Guidelines. Both Silverman and Ponzio had been sentenced prior to the Guidelines; DiRusso had not. Nor are we convinced that the Rule 35 proceeding, *see* note 7 *supra,* under the peculiar factual circumstances present here, should yield a different result.

Other circuits have apparently assumed that relief of the type afforded in *Silverman* is available only under 28 U.S.C. § 2241, thereby requiring the proceeding to be brought before a district court with jurisdiction over the prisoner or his custodian. *See, e. g., Grasso v. Norton,* 520 F.2d 27 (2d Cir. 1975); *Garafola v. Benson,* 505 F.2d 1212 (7th Cir. 1974); *see also* the discussions in *Jacobson* and *Clinkenbeard, supra.*

This jurisdictional issue need not detain us, for *Silverman I* resolved that issue for this Court, and its holding may not be modified except by this Court *en banc.* Third Circuit Internal Operating Procedures, M.2. As we have observed, the government's petition for rehearing in *Silverman I* was denied by *Silverman II, supra.*

the operation of the Guidelines, but he also relied upon an additional list of reasons to support his order reducing Ponzio's sentence. Had the district court's action resulted solely from these latter considerations (*i. e.,* good conduct; time served; sufficient punishment; rehabilitation; family hardship; loss of pension; deterrence, etc.) we would have been obliged to reverse its order, for it is only in the case of frustration of the district court's sentencing expectations that the *Silverman* doctrine affords grounds for relief (under the "collateral attack" provisions of § 2255 (*see* note 9, *supra* )). We recognize that sentencing courts are not vested with those functions belonging to the Parole Board, *D'Allesandro v. United States,* 517 F.2d 429 (2d Cir. 1975), or "with [the] power[s] of a super parole board." *Silverman II, supra.* Hence, we will not countenance *Silverman* relief where the district court's basis for reducing sentence is predicated wholly upon considerations other than frustration of its *original* sentencing intent.

█ Here, however, we are not faced with that situation. Although the district court's opinion speaks of such extraneous matters, we cannot ignore the factor which we find to be at the core of the district court opinion—the frustration of its original sentencing expectations which were specifically so expressed by the original sentencing judge. We do no more here than apply the *Silverman* principle as it has previously been announced by this Court—but with the assurance of greater certainty insofar as knowledge of the district court judge's intent is concerned.

While reaffirming the viability of *Silverman,* we nevertheless restate the admonition found in *Silverman II* that the *Silverman* doctrine is a most narrow and inelastic principle which will not be expanded beyond its strict confines.

## IV.

We conclude this opinion with an observation, collateral to the decision itself but nevertheless required to be made because of the effect which counsel's failure to supply necessary documents might have had upon our decision. As we have noted, the focal point for application of the *Silverman* doctrine is the district court judge's intent and expectations at the time of imposition of sentence. We would have expected, therefore, that the documents and transcripts relevant, and indeed essential, to that issue would be furnished to us as part of the appendix on this appeal. Such was not the case.

Had it not been for our independent inquiry and had we not obtained these documents through our own efforts, we would not have had available for examination:

the relevant docket entries;

the original judgment of sentence;

the original sentencing transcript of May 21, 1973;

the memoranda, motion and submissions in connection with the Rule 35 hearing;

Ponzio's § 2255 letter of petition;

the absolutely essential August 6, 1976 transcript;

the August 6, 1976 orders (vacating sentence and denying stay pending appeal) from which the government's appeal was taken;

the government's Notice of Appeal;

the district court's August 25, 1976 written opinion.

Not one of these documents, each of which was vital to our determination and to this opinion, appears in the appendix on appeal. This Court was required to make separate and independent inquiries to assemble the necessary record materials. Ponzio, the appellee apparently submitted no papers for inclusion in the appendix and did not even recite in his brief those portions of the district court's comments and opinion which supported his contentions and which were instrumental to this Court's application of the *Silverman* doctrine. The government's appendix merely sets forth a number of legal opinions which taken together, constitute no more than a frontal assault on this Court's *Silverman* decision.

While we recognize the obligations imposed upon the appellant by the Federal Rules of Appellate Procedure (F.R.A.P.

30(a) and this Court's Local Rules, we cannot countenance the appellee's failure to comply with the applicable provisions of F.R.A.P. 30(b). Nor can we understand or justify his reliance upon this Court to discharge his functions in "piecing out" and supporting the essential elements of the position which he advocates. While we deplore counsels' disregard of the requirements of our Rules, (F.R.A.P. 30, Third Cir.R. 21) we are even more dismayed by the level of appellate advocacy which has been exhibited on this appeal.[10]

Heretofore we have hesitated to suppress appellate papers or to dismiss appeals for failure to comply with appellate rules. However, presentations such as the instant one go a long way toward dispelling that hesitation. We can no longer afford the effort and time to prepare counsels' case and to supply counsels' record deficiencies. Henceforth, our displeasure with counsels' refusal, failure or unwillingness to master our procedures will necessarily result in the imposition of appropriate sanctions. Third Cir.R. 21(3).

### V.

The August 6, 1976 order of the district court vacating Ponzio's original sentence and resentencing him to "the time already spent in jail" will be affirmed. The August 6, 1976 order of the district court denying the United States a stay pending appeal will be dismissed as moot. (See note 5 supra ).

---

10. We have not overlooked Ponzio's motion to dismiss the government's appeal. Ponzio had moved to dismiss the appeal and to strike certain correspondence which forwarded copies of two recent opinions. (Clinkenbeard and Jacobson, supra ) bearing on the Silverman principle, on the ground that the form of the government's submission did not comply with the rules of this Court concerning filing of reply briefs. The cases submitted had been decided after all briefs were filed, and were furnished for the information of the Court and Ponzio.

Apart from any other consideration requiring the denial of Ponzio's motion, we did not regard the government's submission as a "reply brief" within the purview of F.R.A.P. 28(c).

Of more importance here, however, is that the views which we have expressed in text above reflect our concerns not with form but rather with substance; in particular, the omission of papers from the appendix which papers are crucial to the resolution of the issues before us.