UNITED STATES

v.

Thomas J. WHELAN and Thomas Flaherty.

Civ. 76–2220 (Cr. 567–70).

United States District Court, D. New Jersey.

July 26, 1978.

Supplemental Opinion Aug. 23, 1978.

Robert J. Del Tufo, U. S. Atty. by Mary Ann Desmond, Asst. U. S. Atty., Newark, N. J., for the United States.

Greenspan & Jaffe by Joseph D. DeSalvo, Leon J. Greenspan, White Plains, N. Y., for Thomas J. Whelan and Thomas Flaherty.

## MEMORANDUM

BIUNNO, District Judge.

Pursuant to mandate of the Court of Appeals after the decision in *Addonizio v. U. S.* (Appeals of Whelan and Flaherty), 573 F.2d 147 (CA–3, 1978), the dismissal of the motions of Whelan and Flaherty for reduction or modification of sentence under 28 U.S.C. § 2255 was reversed, and the matter remanded for reconsideration because in this court's ruling, 427 F.Supp. 379 (D–N.J., 1977), it had taken the law to be that there was no jurisdiction.

At the time of the initial ruling, the Court of Appeals had found § 2255 jurisdiction, after the 120-day limit set by Rule 35, by collateral attack on the ground that application by the Parole Commission of the guidelines that took effect in late 1973 frustrated the expectations and intentions of the sentencing judge, in very limited circumstances.

The first case, *U. S. v. Salerno*, 538 F.2d 1005 (CA–3, 1976) involved a defendant sentenced to 3 years, with parole eligibility under 18 USC § 4208(a)(2) [now, § 4205(b)(2)], before the guidelines existed. Because of delay for appeal of his conviction, the defendant did not start serving his sentence until July 1, 1974. He was told then that these indicated 45 to 55 months of incarceration (longer than his entire sentence).

On petition for *rehearing*, 542 F.2d 628 (CA–3, 1976) it was emphasized that the holding was a narrow one, applicable only to sentences setting eligibility for parole under § 4208(a)(2), and that motions under § 2255 did not vest the courts with power of a super parole board.

The second case, *U. S. v. Somers*, 552 F.2d 108 (CA–3, 1977) also involved § 4208(a)(2) parole eligibility, and the court restated "the admonition . . . that the . . doctrine is a most narrow and inelastic principle which will not be expanded beyond its strict confines," 552 F.2d at 114.

In the third case, *U. S. v. Solly*, 559 F.2d 230 (CA–3, 1977) the *Salerno* doctrine was extended to a sentence with parole eligibility established under § 4208(a)(1).

Application of the *Salerno* doctrine was barred, by *Musto v. U. S.*, 571 F.2d 136 (CA–3, 1978) in a case where the judge was aware of the parole guidelines at the time of sentence.

In *Addonizio*, for the first time, the *Salerno* doctrine was extended to any case of frustration of the original intention and expectation of the sentencing judge by the application of later-adopted guidelines, regardless of the source of parole eligibility, whether under § 4202, § 4208(a)(1) or § 4208(a)(2).

Finally, in *Geraghty v. U. S. Parole Comm'n*, 579 F.2d 238 (CA–3, 1978), the court ruled that a class action could be brought for a declaratory judgment, in which the validity of the guidelines themselves and the method of their administration are challenged. The case was remanded to the trial court of the district where the prison is located, and the eventual outcome is not known at this time.

Since hearing the parties after remand, in regard to the nature and scope of the reconsideration to be made, the court has been informed that the Parole Commission granted parole to both Whelan and Flaherty for a date in August, 1978. That action renders moot any further action here, and an order to that effect will be entered.

It may be useful to record the results of an analysis of data compiled in respect to sentences imposed by the late Judge Robert Shaw, who imposed sentence in this case, during his service here, even though the present motion is moot.

What was done involved having the clerk identify all sentences imposed by Judge Shaw for terms of 5 years or more, and then have gathered information showing the date when service of each sentence began and the date when each defendant was released from custody, on parole or otherwise.

Given the starting and release dates, the number of days served was determined with a Hewlett-Packard HP–80 calculator with a programmed calendar to the year 2100 AD. The number of days served was divided by 365 and multiplied by 12 to convert the time served to months, and the result was then divided by the term sentence (in months) to obtain the percentage of the sentence imposed that was served.

In one case, the defendant was credited with time served before sentence, and this was added to the time served after sentence to obtain total time served.

In several cases the defendant is still in custody, and in such cases the time served and percentage of sentence served was calculated to June 30, 1978 to reflect time and percentage served to that date.

The tabulation set out below presents the results of these calculations, arranged in an order to reflect a sequence running from the smallest to the largest percentage. For each entry, only the criminal docket number is shown without giving the name of the particular defendant, in order to provide the statistical data without intruding into the privacy rights of any individual.

For each entry, the sentence imposed is expressed in months, as is the time served. The basis for release (i. e., parole granted, mandatory release, full term, executive clemency, etc.) is noted for each entry.

Judge Shaw did not specify parole eligibility under § 4208(a)(1) in any of these cases. He specified parole eligibility under § 4208(a)(2) in only two cases, one a sentence for 20 years and the other a sentence for consecutive terms totalling 30 years. In three cases, straight sentences imposed by Judge Shaw were modified after his death by another judge to specify parole eligibility under § 4208(a)(2); all three were so modified before the parole guidelines took effect in December, 1973. In one of the three, the surviving judge also reduced the term from 10 years to 8 years. All of these instances are identified in the tabulation.

The dates were gathered and the calculations were made and tabulated, but the court has made no interpretation to ascertain Judge Shaw's original intentions and expectations in view of the fact that the pending motions are moot. The material is set out for publication merely to preserve it for potential future use, all of the work having been done before mootness appeared.

### SENTENCE TABULATION AND CALCULATIONS

| Case No. | Sentence | Time Served | Percent Served | Basis for Release |
|---|---|---|---|---|
| 774-71 | 360 mos.* | 72.690 mos. | 20.19% | In custody 6/30/78 |
| 774-71 | 300 mos. | 52.663 mos. | 20.89% | In custody 6/30/78 |
| 567-70 | 180 mos.** | 37.742 mos. | 20.97% | Paroled |
| 774-71 | 144 mos.** | 32.942 mos. | 21.12% | Paroled |
| 382-69 | 144 mos. | 33.600 mos. | 23.33% | Pardon;terminal illness |
| 567-70 | 96 mos.** | 22.882 mos. | 23.84% | Paroled |

| Case No. | Sentence | Time Served | Percent Served | Basis for Release |
|---|---|---|---|---|
| 155-67 | 168 mos. | 56.679 mos. | 33.74% | Paroled |
| 342-67 | 60 mos. | 21.107 mos. | 35.18% | Paroled |
| 444-68 | 84 mos. | 33.107 mos. | 39.41% | Paroled |
| 406-66 | 240 mos.* | 99.682 mos. | 41.43% | Paroled |
| 155-67 | 180 mos. | 77.589 mos. | 43.11% | Paroled |
| 567-70 | 60 mos. | 26.236 mos. | 43.73% | Paroled |
| 567-70 | 180 mos. | 82.652 mos. | 45.92% | In custody 6/30/78 |
| 567-70 | 180 mos. | 82.652 mos. | 45.92% | In custody 6/30/78 |
| 31-62 | 60 mos. | 27.682 mos. | 46.14% | Paroled |
| 186-64 | 60 mos. | 28.504 mos. | 47.51% | Paroled |
| 774-71 | 60 mos. | 32.942 mos. | 54.90% | Paroled |
| 204-67 | 84 mos. | 54.049 mos. | 64.34% | Mandatory release |
| 342-67 | 84 mos. | 54.345 mos. | 64.70% | Paroled |
| 429-60 | 84 mos. | 54.510 mos. | 64.89% | Mandatory release |
| 292-70 | 60 mos. | 39.189 mos. | 65.32% | Paroled |
| 152-70 | 120 mos. | 78.542 mos. | 65.45% | In custody 6/30/78 |
| 18-66 | 120 mos. | 80.548 mos. | 67.12% | Mandatory release |
| 64-68 | 72 mos. | 49.216 mos. | 68.36% | Mandatory release |
| 382-69 | 144 mos. | 84.822 mos. | 84.76% | Mandatory release |
| 31-62 | 120 mos. | 120 mos. | 100% | Full term |
| 406-66 | 84 mos. | 84 mos. | 100% | Full term |
| 155-67 | 96 mos. | 96 mos. | 100% | Full term |
| 309-68 | 60 mos. | 60 mos. | 100% | Full term |

*Parole eligibility under §4208(a)(2) in original sentence.
**Parole eligibility under §4208(a)(2) specified by another
judge after Judge Shaw's death; in 567-70, 10 year term
also reduced to 8 years.

July 26, 1978 s/ Vincent P. Biunno, U.S.D.J.

## SUPPLEMENTAL OPINION

BIUNNO, District Judge.

After the signing and entry of the Memorandum dated July 26, 1978 it came to the attention of the court that the U.S. Parole Commission had postponed the effective date, originally set for August 10, 1978, on which Mr. Whelan and Mr. Flaherty were to be released on parole, pending a hearing in October on the question whether they had given the Commission false information in respect to the disposition of the $1.2 million which the evidence at trial showed they had deposited in numbered accounts in a Florida bank, and then withdrawn when the extortion investigation was under way.

In these circumstances the seeming mootness of the issue of release from imprisonment was eradicated. Although the order entered to accompany the July 26, 1978 Memorandum granted leave to reinstate the § 2255 motions on 5 days' notice in the event that the prisoners were not released on parole as scheduled, their counsel did not serve and filed any such motion. Instead, he sought to obtain an order to show cause setting an immediate hearing, and for release on bail "instanter" pending the ruling on the motions. He presented these papers to the only judge then available in the Newark vicinage at the time, who could not sign any papers in the case because of his disqualification; he was the U.S. Attorney who conducted the investigation and who signed the indictment. See 28 U.S.C. § 455(b)(3), and § 455(e).

Accordingly, on August 17, 1978, the court entered an order sua sponte setting the matter down for hearing on August 23, 1978, at which time the parties were heard.

■ Both sides agreed that this court had no jurisdiction to consider the action of the U.S. Parole Commission suspending the effect of its prior grant of parole pending an October hearing. That matter could not be

heard by a § 2255 judge and could only be raised by a § 2241 proceeding in the Middle District of Pennsylvania. The court accordingly vacated the order based on the July 26, 1978 Memorandum, and proceeded to hear the merits of the § 2255 motions as though there had not been a grant of parole later suspended or postponed.

This is not a routine case or a routine motion. It is quite a perplexing one. It has occupied a considerable amount of time on the part of the Court not only in reviewing the line of cases, but also in examining everything it could find to help cast light on the key question in this case.

As gradually developed in the line of cases from *U. S. v. Salerno,* 538 F.2d 1005 (3d Cir. 1976), to *U. S. v. Addonizio,* 573 F.2d 147 (3d Cir. 1978), the major principle expounded to support jurisdiction under 28 U.S.C. § 2255, as well as orders thereunder to correct the sentence, is:

"That a sentencing judge's intent and probable expectations should be vindicated to the fullest extent possible." That is from the *Addonizio* opinion.

From this principle, and from the moral considerations listed by the Court of Appeals in the *Addonizio* case, the ruling observes that there arises,

"a right of the prisoner to relief upon proof that the sentencing judge's intentions and expectations regarding the prisoner's incarceration have been frustrated by a post-sentencing change in criteria governing parole determinations."

This principle, it was emphasized, has no dependence on the particular statute which controls eligibility for parole. Even though *Salerno* expressly limited the jurisdiction and relief to cases where parole eligibility was governed by former § 4208(a)(2), it was extended in *U. S. v. Solly,* 559 F.2d 230 (3d Cir. 1977) to cases where parole eligibility was governed by former § 4208(a)(1), and in *Addonizio* it was extended to cases governed only by former § 4202; that is, where the sentence was a "straight" sentence with no statement or provision dealing with parole eligibility in the sentence itself.

In the earlier cases, so far as proof of frustration is concerned, there was either a statement of the sentencing judge on the record at the time of sentence to reflect his expectation or intent, as in the *Salerno* case, or else, even though there was no statement at sentence, there was a statement of intent by the same judge in his findings sitting as a § 2255 Judge, as in *U. S. v. Somers,* 552 F.2d 108 (3d Cir. 1977). In that case the Court of Appeals said, "There can be no better evidence of a sentencing judge's expectations or intent than his own statement of those facts," even though the statement be made on the § 2255 motion rather than at sentence.

The same situation is true in the case of *U. S. v. Addonizio.* Nothing was said at sentence about parole expectations and intentions. The statement in this regard was made on the § 2255 motion.

In this case, what was said when the 15-year sentences were imposed is entirely silent on this subject. The record gives no clue or indication at all in regard to Judge Shaw's expectations or intent in regard to parole at that time, namely, August 10, 1971.

Later, in 1972, after Mr. Whelan and Flaherty had abandoned their pending appeals, had pleaded guilty to the two income tax indictments, and had appeared for sentence, the Court said:

"THE COURT: Very well. I am satisfied that rehabilitation has begun. The voluntary admission of guilt and the withdrawal of appeal indicate that Mr. Whelan has recognized the gravity of his offense, and, of course, civil liabilities become more or less to some extent fixed by the plea of guilty."

"It is the sentence of this Court that you be placed in the custody of the Attorney General of the United States and by him or his accredited representatives to be committed for a period of five years, to be served concurrently with the sentence imposed in Indictment No. 570–70."

"It is further ordered that you pay a fine of $10,000. Sentence is imposed on the Indictment consisting of two counts."

"This affords all the opportunity for rehabilitation that could be given, and the rest lies with the United States Board of Parole after serving the minimum term of five years on both sentences."

"The report from Lewisburg is quite favorable and indicates the defendant is establishing a good record for himself there. I am sure in due course that the United States Board of Parole will give consideration to that. That's all."

What I have read is from the transcript of February 17, 1972, Pages 5 and 6.

In the case of defendant Flaherty, whose sentence on the income tax charges followed immediately thereafter, the Court said:

"THE COURT: Well, despite the fact that conviction on a plea of guilty is on five counts as opposed to two counts for the defendant Whelan, I find no real basis for distinction."

"Here, too, a favorable report has been received as to your conduct at Lewisburg indicating that the defendant Flaherty is well aware of the gravity of the offense committed and is desirous of cooperating in the matter of rehabilitation."

"In this matter, also, I will sentence on the indictment rather than sentence separately on each count."

"It is the sentence of the Court that the defendant be placed in the custody of the Attorney General of the United States, and by him or his accredited representative committed to an appropriate institution for a period of five years; sentence to be served concurrently with the sentence imposed on Criminal Indictment No. 570–70, which sentence the defendant is presently serving."

"It is further ordered that the defendant pay a fine of $10,000."

"All I would add to that is a suggestion to this effect: that you continue to demonstrate at Lewisburg the good conduct which has been reported on your part, and I am sure that if that continues it will be a matter that will not be overlooked by the United States Board of Parole when you become eligible for parole."

"I subscribe to the theory that one of the major objectives to be kept in mind in sentencing is rehabilitation. There is also the matter of deterrence, which will discourage others from launching into the same kind of activity."

"I had that in mind when I imposed the prison term on the extortion charges. That's all, thank you, counsel."

That is from the transcript of February 17, 1972, Pages 8 and 9.

Later in the year, after the appeals in the extortion case had been dismissed, defendants applied for reduction of sentence in Criminal 570–70. The applications were denied May 16, 1972. In the memorandum and order, Judge Shaw said:

"The Court has reviewed the Presentence Report again and the nature of the offense committed, and has reached a conclusion that the sentence of imprisonment for a term of fifteen years on Indictment Criminal 570–70 was not unjust. The Court has recognized that the defendant did show penitence, manifested by a guilty plea to income tax evasion, and withdrawal of his appeal. There is, however, no affirmative evidence that the defendant has turned away from his old political associates, and there is some indication that the old loyalties may still be intact.

"Accordingly, after careful consideration of the entire background of this matter, the Court has reached the decision that the motion for reduction of sentence should be denied."

This denial was appealed, and submitted under Third Circuit Rule 12(6) and was affirmed by the Court of Appeals December 8, 1972; Court of Appeals Nos. 72–1588 and 1589.

It should be noted in connection with what Judge Shaw took into account that under 18 U.S.C. § 3577, Congress has declared that no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a Court of the

United States may receive and consider for the purpose of imposing an appropriate sentence.

Since that time, much the same concept has been repeated by the enactment by the Congress of Federal Evidence Rule 1101(d)(3), which declares that the Rules of Evidence do not apply to sentencing or to proceedings with respect to release, on bail or otherwise.

Turning back to late 1971, when Whelan and Flaherty retracted their earlier pleas and pleaded guilty to the indictments for false income tax returns, the record shows that defendants were already serving their 15-year sentences at Lewisburg for failure to make bail pending appeal, which Judge Shaw had set at $400,000 each. Through counsel, the defendants asked that sentence be imposed that day, pleading the inconvenience or embarrassment of extensive publicity each time that they were transferred from Lewisburg to the Courthouse in Newark.

There was mention, too, that discussions were under way to resolve the civil liability for taxes and that IRS would not take the matter up until the criminal case had been completed.

The following colloquy ensued:

"THE COURT: It seems to me for all practical purposes the criminal matter has been resolved. I don't see how sentencing would have anything to do with the resolution of the civil matter.

"MR. FREDERICKS: We agree with your Honor on that. We are just anxious to move forward on that matter, and my clients are anxious not to have to be continually brought back to this jurisdiction. The Probation Report that your Honor has before you is current, and I ask the Court to impose sentence today if the Court feels it is in a position to do so.

"THE COURT: I would prefer not to do so.

\* \* \* \* \* \*

When do you contemplate discussions on the civil liability?

"MR. FREDERICKS: We are prepared and are in process now. We have entered the plea today and we are in a position today to immediately begin contact with IRS.

"THE COURT: Begin straightening that matter of the aspect out, because it is something that I should take into consideration.

"MR. FREDERICKS: We are fully aware of that.

"THE COURT: Make as much progress as you can, and I am sure that the final sentencing is not going to generate any particular publicity."

I have read from the transcript of December 6, 1971, Page 9, Line 13, Page 10, Line 25, with one portion which I skipped.

The files of the Probation Office show that supplemental Presentence Reports dealing with the income tax indictments were submitted January 20, 1972. In both reports reference is made to the numbered bank accounts opened by Whelan and Flaherty with First National Bank of Miami, in which an aggregate of some $1.2 million was deposited, all of this being withdrawn by a messenger identified as an aide to Mr. Whelan in May, 1970, after the investigation had begun.

The reports note that nothing remotely approaching these amounts were reported for tax purposes, and that the bonds and checks withdrawn had never been discovered.

With this factual background, the Court now turns to the key question: Have Whelan and Flaherty proved that Judge Shaw's intentions and expectations regarding their incarceration have been frustrated by a post-sentencing change in criteria governing parole determinations such as to warrant a correction of the sentence under § 2255.

As observed by the Court of Appeals in *U. S. v. Addonizio, supra,* the criteria relied on by the Board of Parole at the time of sentence were three:

(1) observation of the rules of the institution in which the prisoner is confined;

(2) a reasonable probability that the prisoner will live and remain at liberty without violating the laws; and,

(3) release is not incompatible with the welfare of society.

And the Court cites as a reference 28 CFR § 2.2 (1971).

Under the later guidelines, the third element was replaced by one taking account of the " 'nature and circumstances of the offense'." For this the Court of Appeals cites 28 CFR § 2.18 (1976).

While the argument may be made that these two expressions are no more than different ways of saying the same thing, and that the present version is no more than a reflection of the standard established by the Congress, namely, that to warrant release there must be an affirmative finding "that release would not depreciate the seriousness of his offense or promote public disrespect for the law" [P.L. 94–233, § 2, now found in 18 U.S.C. § 4206(a)(1), 1976 Edition], the Court of Appeals for this Circuit has held that the change is one of substance. It has also indicated that, as a matter of law, this change frustrates the sentencing judge's intention, because when " 'the nature and circumstances of the offense' " led the sentencing judge to impose an extended term sentence, the same factor cannot be used a second time as a ground for denying parole.

The Court of Appeals said on this point: "Traditional standards of criminal justice reject this apparent double punishment for the same factor—one punishment imposed by the sentencing court, the other by the Parole Commission."

The point may be open to debate, but as this Court reads the Third Circuit opinion, the ruling amounts to one on a matter of law. This is particularly so because, in referring to its earlier decision in 1968, in *Berry v. U. S.*, 3d Cir., 412 F.2d 189, the Court of Appeals said—they could say what they did in 1968 because, "Like the sentencing judges in the present appeals, we knew that prior to 1970 the Parole Board relied on the criteria," et cetera, et cetera.

So, as I read it, the Court of Appeals has said that it knows the sentencing intentions of all the District Judges in this Circuit.

Whether the same result would have been reached if the Parole Commission had applied the new statutory standards as enacted by the Congress is a question that this Court need not address, since that was not the expression or reference used.

It is true that in imposing sentence on the income tax charges Judge Shaw did make a disclosure of his sentencing intent as of the time he imposed sentence on the extortion charges, and he referred to two significant criteria: one, rehabilitation; two, deterrence which will discourage others from launching into the same kind of activity. That is from the transcript of February 17, 1972, Page 9.

However, according to the decision of the Court of Appeals, this statement does not compel a reading that the " 'nature and circumstances of the offense' " can be considered a second time for parole purposes. It may have been no more than an explanation for the straight sentence of 15 years, of which a minimum of five had to be served, in any event, with ten years of parole supervision to follow.

The matter of the $1.2 million and the civil tax liability, as well as the $10,000 fines, which this Court understands have not been paid, remain to be considered.

Whelan and Flaherty were convicted of 28 counts of extortion and conspiracy to extort, in violation of 18 U.S.C. § 1951. Each count carried a maximum penalty of twenty years or $10,000, or both.

They were also convicted of one count of conspiracy to violate the Travel Act, which carried a maximum penalty of five years or $10,000, or both.

Thus, the maximum exposure was to consecutive sentences totaling 565 years and fines totaling $290,000. On that conviction Judge Shaw imposed a general sentence of 15 years and no fine. In this sense, and in view of the evidence in the trial about the $1.2 million, the sentence can hardly be termed harsh.

■ As this Court sees it, that sentence was a mild one. Judge Shaw could have imposed a term of 15 years on half the counts and a consecutive term of 15 years on the other half, with execution of the sentence on the second 15-year term suspended and the defendants placed on probation with special conditions to ensure that the fate of the $1.2 million was disclosed and accounted for, or that restitution be made to Jersey City of the moneys taken from the Treasury. But this sentencing option was not used by Judge Shaw.

■ Similarly, on the income tax charges, Judge Shaw could have directed that the defendants "stand committed" until the fines were paid. In that event, no release could be obtained without payment except on proof of indigency under oath with jeopardy or peril of perjury or false swearing under the statute, 18 U.S.C. § 3569. That option was not used by Judge Shaw.

See also 18 U.S.C. § 3565 in regard to execution for the collection of fines.

Rather, the colloquy on the retraction of plea on the income tax charges suggests that while Judge Shaw regarded the resolution of the civil tax liability as a factor in sentencing, he must have been aware at sentence time that the tax aspect had not been resolved and presumably took that into account.

■ Also, Judge Shaw's observations appear to regard the tax liability as a matter to be disposed of by civil proceedings. Once the appeals on the extortion charges had been dismissed and once the sentences were imposed on the income tax charges, there appears to have been no obstacle to the prosecution of appropriate civil proceedings, as there could not have been any self-incrimination problem any longer. Beyond that, any criminal statute of limitations for both State and Federal offenses has long since run.

■ Insofar as Whelan and Flaherty were public officials, it may well be that they have been and still are subject to a civil action for accounting on behalf of the City of Jersey City, since whatever funds they diverted from its treasury were public funds, and, hence, trust funds. See, for example, the factual account set out by In Re: Abrams, 65 N.J. 172, 320 A.2d 471 (1974) for description of a method by which $102,000 was diverted from the Jersey City treasury in late 1968 by the pretense of authorizing payment of a real estate broker's commission on the sale of city land disposed of by bid at a public auction. This was used as a means for providing the funds to pay political contributions with money taken straight out of the Jersey City treasury.

Both Whelan and Flaherty were in office at the time. This item was not among those of which they were tried and convicted. Yet, the City of Jersey City has been free and presumably still is free to bring suit for an accounting and to trace and recover whatever remains of the evidently massive diversions of public funds.

In addition, under the present law the Parole Commission, if it were concerned about these elements, could have imposed reasonable conditions to deal with them as part of an order granting parole. This is under 18 U.S.C § 4203(b)(2).

For these reasons, it appears that Judge Shaw intended to leave these matters to civil proceedings, no doubt expecting that their outcome would be controlled in large part by the criminal convictions. The fact that federal and state authorities have not taken steps along these lines actively cannot be regarded as warranting a finding that Judge Shaw, were he alive today, would make a determination of lack of frustration of his sentencing intent.

So far as the record shows, it is obviously equivocal on the critical question of whether Whelan and Flaherty have established as a matter of fact a frustration of Judge Shaw's sentencing intent and expectation. However this Court might try to read his mind in that regard, it is plain that the Court of Appeals is in an equal position, or, because of what it has already said, it may feel that it is in a better position, to make

that determination. It has been said that the only 20/20 vision is hindsight. While the Court of Appeals deferred the question to the trial court, it did so only "in the first instance."

A study of Judge Shaw's term sentences of five years or more, where the defendant has been paroled, discloses sixteen such sentences. For these the median time served at parole was between 43% and 44% of the term sentence imposed.

In the case of four of the sixteen, eligibility for parole was declared under the former § 4208(a)(2), one by Judge Shaw, and three by another judge after his death on a Rule 35 motion. If these four are excluded and only the straight sentences taken into account, the median time served is about 46% of the term sentence at parole. This means that half of the prisoners served less than 46% and the other half more than 46% of their sentences, the longest one being a high of 65.32% before parole.

I am not counting releases which are mandatory releases. I am counting only paroles.

As of today, August 23, 1978, Whelan and Flaherty will have served 84.427 months of the 180 month term. This is 46.9% of the original sentence, which is slightly above the median, but not very much.

 Under these circumstances and in light of the ruling by the Court of Appeals that the seriousness of the offense, of itself, cannot be taken into account twice, the Court considers itself bound thereby and accordingly obliged to correct the sentence, regardless of its own views on the subject. However, it does not appear that a sentence to time served would be an appropriate remedy to be fashioned. This is because Judge Shaw would have naturally expected that when released on parole defendants would remain subject to parole supervision for the remainder of the 15-year terms.

This sentencing intention and expectation can be achieved and not frustrated by entering a corrected sentence of ten years on the 28 counts charging extortion and conspiracy to extort, and a consecutive sentence of five years on Count 2, the general conspiracy count, with execution of the five-year sentence suspended, and the defendants placed on probation for five years following release from parole supervision on the 10-year term, with special conditions.[1]

Under 18 U.S.C. § 4206(d) [1976], Whelan and Flaherty would be required to be released on parole under such a sentence because they have served two-thirds of the corrected ten-year sentence unless, of course, the Parole Commission should have information to warrant the findings which that section declares to be a basis for denying parole even though two-thirds of the sentence has been served. They will then be on parole supervision for some part of the remaining ten years, and that will be followed by probation for five more years, thus preserving, essentially, the 15-year term imposed by Judge Shaw, which he

---

1. Given the § 2255 jurisdiction in this case as mandated by the Court of Appeals, the fact remains that the statute authorizes the court which imposed the sentence to do only one of three things, namely to (1) vacate, (2) set aside, or (3) correct the sentence.

Nothing presented on these motions, or on any earlier motion, would warrant either vacating or setting aside the sentences. Whelan and Flaherty were convicted after trial, on overwhelming evidence. They abandoned their appeal and negotiated a plea on the income tax charges no doubt in the hope that this would avoid the imposition of consecutive sentences, which it did. Their co-defendants pressed their appeals, and the convictions were affirmed for reasons fully applicable "on all fours" to Whelan and Flaherty.

In the earlier cases from *Salerno* to *Addonizio*, in which the § 2255 motion was granted and the action taken is reported, what was done was to correct the sentence to "time served".

Whatever the circumstances in those cases may have been, the record in these cases does not warrant a corrected sentence to "time served". Such a sentence would turn the prisoners free after 7 years of a 15 year sentence without supervision. This would clearly frustrate Judge Shaw's sentencing intentions and expectations. Under the law in effect at the time, even a prisoner who served his term sentence less good-time deductions was, on release, deemed "as if released on parole" until the expiration of the maximum term of the sentence less 180 days, 18 U.S.C. § 4164 (1951).

clearly intended to be partly served in jail and partly on parole. That structure carries with it the peril that any subsequent infractions of the law may and probably will result in revocation of parole or probation, as the case may be, thus further preserving Judge Shaw's sentencing intent.

A separate order for the corrected sentence will be entered.

To the extent that anyone can determine today what Judge Shaw had in mind seven years ago this month, and the significance of the mandate of the Court of Appeals in this case, the ruling made here is felt after extensive deliberation and consideration to satisfy both those components in a balanced and even-handed fashion. The matter of actual release on parole, of course, remains a matter to be considered and decided by the Parole Commission in accordance with the law as enacted by the Congress in 18 U.S.C. § 4206(d). Since the § 2255 motion has been decided on the merits today, this Court denies the application for an order directing instant release on bail pending decision on the motion.

To do so, in any event, would improperly interfere with the duties and functions assigned by the Congress to the Executive Branch. See, for example, *U. S. v. Murray*, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928) and *U. S. v. Affronti*, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed.2d 62 (1955).

The order that will be entered today carries provisions which I will read into the record.

"One, the denial of the motion by the order dated July 26, 1978, is hereby vacated.

"Two, the motion to correct the sentence herein is hereby granted.

"Three, the sentence imposed August 10, 1971 by the late Honorable Robert Shaw, U.S. District Judge, is hereby corrected to read as follows:

"The defendant is hereby committed to the custody of the Attorney General, or his authorized representative, for imprisonment,

"A. On Counts 1, 3, 4, 5, 6, 8, 9, 11, 12, 13, 14, 16, 17, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 34, for a term of ten years;

"B. On Count 2, for a term of five years, consecutive to the term sentence imposed under Part A hereof. Execution of this five-year term sentence is suspended, and defendant is placed on probation for a period of five years to follow release from parole supervision on the preceding ten-year term;

"C. Special conditions of probation, in addition to the general conditions, are imposed as follows:

"(1) Defendant shall not accept or hold any public office or position of any nature whatsoever;

"(2) Defendant shall not engage in any activity, whether individually or on behalf of another, that involves dealing with any governmental or public body or agency, nor shall he accept employment by any person or entity which receives payments from or is financed by public funds in whole or in part;

"(3) Defendant shall not engage in any activity, either individually or on behalf of another, which involves or is connected with gambling of any kind, whether legalized or not, and he shall not frequent any place where any such activity is carried on; [2]

"(4) Defendant shall keep and maintain complete financial records in writing, to reflect and record any and all assets and liabilities and all transactions therein, as well as of all money and property received, disbursed or transferred, and such other financial information as may be specified by the Probation Office from time to time. Said records shall be submitted to the Probation Office for inspection on request, but not less often than twice each year, together with defend-

---

**2.** This condition is imposed because of the testimony at trial that Whelan had received a "pay-off" of $15,000. from one "Lefty" Marchitto, a reputed numbers operator, for protec-tion. Judge Shaw made reference to this testimony during the colloquy before imposing the 15 year sentences, as evidence of an unholy alliance with organized crime.

ant's statement under oath that the same are true and complete;

"(5) Defendant shall not travel outside the continental United States, and shall not apply for or obtain any passport, except as may be allowed by Order of the Court on terms."

"Four, the sentence imposed by Parts B and C of Paragraph 3 hereof, is imposed pursuant to 18 U.S. Code Section 3651.

"Five, defendant shall be credited with all time served since sentence was originally imposed on August 10, 1971."